Wanda HOSKINS; and David
Paul Smith, Appellants,

v.

R. Cletus MARICLE, Clay Circuit
Court, Judge, Appellee.

and

Commonwealth of Kentucky (Real
Party in Interest) Appellee.

No. 2002–SC–0579–MR.

Supreme Court of Kentucky.

Aug. 26, 2004.

As Modified on Denial of Rehearing
Dec. 16, 2004.

**2** 

Stephan Charles, Manchester, Counsel for Appellant Wanda Hoskins.

Marcus S. Carey, Erlanger, Counsel for Appellant David Paul Smith.

R. Cletus Maricle, Manchester, pro se, Counsel for Appellee R. Cletus Maricle, Clay Circuit Court Judge.

Gregory D. Stumbo, Attorney General, Karen M. Timmel, Assistant Attorney General, Brian T. Judy, Assistant Attorney General, Frankfort, Counsel for Real Party in Interest Appellee Commonwealth of Kentucky.

Opinion of the Court by Justice COOPER.

Appellants, Wanda Hoskins and David Paul Smith, petitioned the Court of Appeals for a writ prohibiting Appellee, R. Cletus Maricle, judge of the Clay Circuit Court, from ordering a retrial of their indictments for murder and abuse of a corpse and directing him to approve the plea agreements that they negotiated with a special prosecutor. The Court of Appeals denied the writ and they appeal to this Court as a matter of right. Ky. Const. § 115; CR 76.36(7)(a). We affirm.

The indictment charged each Appellant with two counts of murder, a capital offense, KRS 507.020(2), and two counts of abuse of a corpse, a Class A misdemeanor. KRS 525.120(2). The indictments stem from allegations that Appellants shot and killed Ora Curry and Joe Hicks, Jr., and placed their bodies in the trunk of an automobile that they then submerged in a body of water. The trial began in the Clay Circuit Court on March 27, 2000, with Judge Maricle presiding. On March 31, 2000, during the twelfth hour of jury deliberations, Judge Maricle learned that the jurors had been permitted to separate in violation of RCr 9.66 and declared a mistrial.

The Clay County Commonwealth's attorney thereafter disqualified himself from prosecuting the second trial, and a special prosecutor was appointed. Following plea negotiations, an agreement was reached to dismiss the abuse of a corpse charges, to dismiss one count of murder against each Appellant, and to amend the remaining counts of murder to charge each Appellant with one count of manslaughter in the second degree, a Class C felony. KRS

507.040(2). In exchange, Appellants agreed to plead guilty to the remaining amended count for which the special prosecutor would recommend that each serve ten years in prison, the maximum sentence for a Class C felony. KRS 532.020(1)(b). The special prosecutor then moved the trial court to amend the indictment in accordance with the plea agreement, and Appellants filed motions to enter guilty pleas to the amended charges. The motion to amend the indictment recited that there was a factual predicate for the amendment, *i.e.*, evidence that the victims had previously threatened Appellants' lives and, thus, a likelihood that a jury would convict Appellants of second-degree manslaughter under a claim of imperfect self-defense. KRS 503.120(1); *Elliott v. Commonwealth*, Ky., 976 S.W.2d 416 (1998). (The jury at the first trial was not instructed on any theory of self-defense.)

On August 6, 2001, Judge Maricle heard evidence on the motions, including testimony from the victims' families and friends. The Court of Appeals denied a motion to include the videotape of that hearing in the record of this original action, deeming it unnecessary to its decision. However, we assume that the victims' families and friends objected to the plea agreement and that Judge Maricle was persuaded to some extent by their testimony. Appellants and the Commonwealth agree that Judge Maricle commented extensively following the hearing, referred to his intimate knowledge of the case gleaned from presiding over the first trial, and rejected the agreement as too lenient. His succinct written order of April 4, 2002, simply denied Appellants' motions to enter guilty pleas to second-degree manslaughter, effectively overruling the Commonwealth's motion to amend the indictment.

In their petition for a writ of prohibition, Appellants claimed, *inter alia*, that Judge Maricle acted outside his jurisdiction in overruling the prosecutor's motion to amend the indictment because the prosecution of felony cases is vested exclusively in the executive department of government, *i.e.*, the Commonwealth's attorney. KRS 15.725(1). In the alternative, they claimed that he acted erroneously within his jurisdiction by refusing to approve the plea agreement and by permitting the victims' families and friends to object to the terms of the agreement. The Court of Appeals denied the petition solely on the grounds that "[p]etitioners have failed to show that they do not have an adequate remedy upon appeal nor have they shown that they will be irreparably harmed."

## I. WRIT OF PROHIBITION.

Section 110(2)(a) of our present Constitution vests this Court with jurisdiction to entertain an original action for a writ of prohibition, *viz:*

> The Supreme Court shall have appellate jurisdiction only, except it shall have the power to issue all writs necessary in aid of its appellate jurisdiction, or the complete determination of any cause, or as may be required to exercise control of the Court of Justice.

Similarly, Section 111(2) authorizes the Court of Appeals to "issue all writs necessary in aid of its appellate jurisdiction, or the complete determination of any cause within its appellate jurisdiction." Thus, whether to grant or deny a petition for a writ is not a question of jurisdiction, but of discretion. *Bender v. Eaton*, Ky., 343 S.W.2d 799, 800 (1961) ("The exercise of this authority has no limits except our judicial discretion."). Because writs interfere with both the orderly, even if erroneous, proceedings of a trial court and the efficient dispatch of our appellate duties, the courts of this Commonwealth have periodically attempted to formulate a rule

governing the discretionary choice between issuing a writ and relegating a petitioner to the right to appeal. Ky. Const. § 115. The present version of the "rule" was articulated in *Southeastern United Medigroup, Inc. v. Hughes,* Ky., 952 S.W.2d 195 (1997), *viz:*

> [A] writ of prohibition should be granted *only upon* a showing that: 1) the lower court is proceeding or is about to proceed *outside its jurisdiction* and there is *no adequate remedy by appeal,* or 2) the lower court is about to act incorrectly, although *within its jurisdiction,* and there exists *no adequate remedy by appeal or otherwise and great injustice and irreparable injury would result.*

*Id.* at 199 (emphasis added) (internal quotes omitted).

Because Appellants claim that Judge Maricle is acting either outside his jurisdiction or erroneously within his jurisdiction, both tests apply. Thus, the issues are (1) whether the right to appeal[1] *precludes* the issuance of a writ of prohibition when a trial court is proceeding outside its jurisdiction; (2) whether the right to appeal is an "adequate remedy;" and (3) whether "great injustice and irreparable harm" will result if the petition is denied.

Our case law, at least over the past twenty-three years, has been facially inconsistent with respect to the first issue. *Compare, e.g., Peterson v. Shake,* Ky., 120 S.W.3d 707, 710 (2003) (though observing that "Appellant has no other adequate remedy at his disposal"), *Shamrock Coal Co., Inc. v. Maricle,* Ky., 5 S.W.3d 130, 133

(1999), *Petrey v. Cain,* Ky., 987 S.W.2d 786, 788 (1999), *Coms v. Transp. Cabinet,* Ky., 814 S.W.2d 574, 578 (1991), and *Wood v. Graham,* Ky., 633 S.W.2d 404, 406 (1982), none of which imposed or recited the "inadequate remedy" requirement, *with Lewis LP Gas, Inc. v. Lambert,* Ky., 113 S.W.3d 171, 175 (2003), *Ky. Labor Cabinet v. Graham,* Ky., 43 S.W.3d 247, 255–56 (2001), *Commonwealth v. Ryan,* Ky., 5 S.W.3d 113, 115 (1999), *Potter v. Eli Lilly & Co.,* Ky., 926 S.W.2d 449, 452 (1996), *Fischer v. State Bd. of Elections,* Ky., 847 S.W.2d 718, 720 (1993), *Shumaker v. Paxton,* Ky., 613 S.W.2d 130, 131 (1981), and *Tipton v. Commonwealth,* Ky.App., 770 S.W.2d 239, 241 (1989), all of which either imposed or recited the "inadequate remedy" requirement. An understanding of how this divergence of authority occurred requires historical context.

From 1799 until 1891, the constitutional jurisdiction of the "old" court of appeals[2] was limited to "appellate jurisdiction only, which shall be coextensive with the State, under such restrictions and regulations, not repugnant to this Constitution, as may, from time to time be prescribed by law." Ky. Const. of 1799, art. IV, § 2; Ky. Const. of 1850, art. IV, § 2. Under this regime, a circuit court, as the court of general jurisdiction, could issue a common law writ prohibiting an inferior court from acting outside its jurisdiction, *Arnold v. Shields,* 35 Ky. (5 Dana) 18, 23 (1837); *Reese v. Lawless,* 7 Ky. (4 Bibb) 394, 394–95 (1816), but the common law did not authorize a circuit court to prohibit an inferior court from acting erroneously

---

1. Since 1976, every litigant in Kentucky, except the Commonwealth in a criminal case, has had a constitutional right to appeal to a higher court. Ky. Const. § 115; 1974 Ky. Acts, ch. 84, § 1.

2. Prior to January 1, 1976, only one appellate court existed in Kentucky, denominated the

"court of appeals." The 1975 amendment of the Judicial Article transformed the "old" court of appeals into the present Supreme Court, 1974 Ky. Acts, ch. 84, § 2(1), (6)—(8), and created a new intermediate court, denominated the "Court of Appeals." *Id.* at § 2(3).

within its jurisdiction, for which the only remedy was an appeal. *Bank Lick Turnpike Co. v. Phelps,* 5 Ky.L.Rptr. 713, 81 Ky. (4 J.Rodm.) 613, 617 (1884). However, because the court of appeals possessed only appellate jurisdiction, it deemed itself lacking authority to issue a writ of prohibition. *Sasseen v. Hammond,* 18 B.Mon. 672, 57 Ky. 672 (1858).

When Section 110 of the 1891 Constitution was adopted, it added language giving the court of appeals "power to issue such writs as may be necessary to give it a general control of inferior jurisdictions." Ky. Const. of 1891 § 110. At the 1890 Constitutional Convention, Delegate Thomas H. Hines of Franklin County, a former chief justice of the court of appeals, offered an amendment that would have deleted the new language. 3 *Debates of Constitutional Convention of 1890* 3127. Delegate C.J. Bronston of Lexington explained:

> I presume that the Delegate from Franklin means, by that amendment, that the Court already has that power as an inherent power in the Court. I am inclined to agree with the Delegate from Franklin on that legal proposition; but it was believed, on the part of the General Committee, after a discussion of that matter, that it would be better to express that in the Constitution, so as to relieve it from any possible doubt in the mind of anybody within the Commonwealth of Kentucky.

*Id.* Clearly, it was the intent of the delegates that the court of appeals at least have the authority to prohibit inferior courts from proceeding outside their jurisdiction.

Our predecessor court initially declined to interpret Section 110 of the 1891 Consti-

tution as conferring authority to prohibit a trial court from proceeding erroneously within its jurisdiction, even where there existed no right to appeal from the erroneous action.[3] *Standard Oil Co. v. Linn,* Ky., 17 Ky.L.Rptr, 832, 32 S.W. 932, 933 (1895). That reluctance was short-lived. In *Weaver v. Toney,* 107 Ky. 419, 54 S.W. 732 (1899), the court held that a writ was appropriate to prohibit a circuit judge from acting outside his jurisdiction, *id.,* 54 S.W. at 738, but also signaled its intent to consider petitions for writs in other circumstances:

> [W]here the inferior tribunal is proceeding out of its jurisdiction, the power of the court may be invoked to stay the exercise of such jurisdiction; and it would also seem, in certain classes of cases, that even where the inferior tribunal has jurisdiction this court may likewise interfere, *if the remedy by appeal is not entirely adequate, or if the court,* in the exercise of its discretionary powers *shall deem it necessary* to so interfere.

*Id.* at 734 (emphasis added). *Weaver* was the genesis of the "inadequate remedy by appeal" requirement and indicated that it would apply only when it was claimed that the inferior tribunal was acting erroneously within its jurisdiction. *Weaver* went on to explain that "necessary" meant that "an excessive and unauthorized application of judicial force, although in a case otherwise properly cognizable by the court or judge in question, may be prevented by prohibition." *Id.* at 736 (internal quotation omitted). The "necessary" circumstance articulated in *Weaver* evolved into the "great injustice and irreparable injury" requirement of our present rule. *Ohio River*

---

**3.** The absolute right to appeal to a higher court was not established until 1976. *See* note 1, *supra.*

*Contract Co. v. Gordon,* 170 Ky. 412, 186 S.W. 178, 181 (1916) (A writ will issue "only as *a matter of necessity to shield from injustice,* against which there [is] no other adequate remedy and to preserve the orderly administration of the laws." (emphasis added)), *aff'd,* 244 U.S. 68, 37 S.Ct. 599, 61 L.Ed. 997 (1917). *Gordon* also held that the "inadequate remedy by appeal" requirement applied whether the petition sought to prohibit the lower court from proceeding outside or erroneously within its jurisdiction.

> In no instance has a writ of prohibition been allowed against a court proceeding out of its jurisdiction or erroneously within its jurisdiction when any other adequate remedy for the threatened wrong existed, which was adequate. If the right of appeal exists and it is an adequate remedy, the complaining party must be relegated to his remedy through appeal.

*Id.* However, *Gordon* continued that "the writ is granted as a matter of sound discretion," *id.,* and it was cited for that proposition in *Bender v. Eaton,* 343 S.W.2d at 800. After *Gordon,* and until *Shumaker v. Paxton* was decided in 1981, no Kentucky case suggested that the "inadequate remedy by appeal" requirement applied when the lower court was proceeding outside its jurisdiction.

In *Duffin v. Field,* 208 Ky. 543, 271 S.W. 596 (1925), the court formulated a bright line rule with respect to writs of prohibition:

> [W]e will prohibit inferior courts in all cases where (1) they are threatening to proceed, or are proceeding in a matter of which they have no jurisdiction and there is no remedy through an application to an intermediate court; and (2) where they, although possessing jurisdiction, are exercising or about to exercise it erroneously and great injustice

and irreparable injury would result to the applicant if they should do so, *and* there exists no other adequate remedy by appeal or otherwise.

*Id.,* 271 S.W. at 596. Under this rule, the court would *always* issue a writ to prohibit an inferior court from proceeding outside its jurisdiction *unless* there was a remedy available through application to an intermediate court, *e.g.,* a petition to a circuit court for a writ against an inferior court. Thus, *Duffin* eliminated any discretion to deny the petition in such a circumstance even if there was an adequate remedy by appeal. Compare the "in all cases" language in *Duffin* with the "only upon" language in *Southeastern United Medigroup,* 952 S.W.2d at 199. Per *Duffin,* the "no adequate remedy by appeal" and the "great injustice and irreparable injury" requirements applied only when the lower court was proceeding erroneously within its jurisdiction. *Id.,* 271 S.W. at 596.

*Evans v. Humphrey,* 281 Ky. 254, 135 S.W.2d 915 (1940), restated the *Duffin* rule except for the "in all cases" language, which it deleted. *Id.,* 135 S.W.2d at 917. We assume the deletion was intended to restore the element of discretion in cases where the lower court was proceeding outside its jurisdiction (a factual scenario not present in *Evans* ).

The two most significant opinions on this subject are *Chamblee v. Rose,* Ky., 249 S.W.2d 775 (1952), and *Bender v. Eaton, supra,* both authored by Commissioner Clay. In *Chamblee,* the petitioner sought a writ to prohibit a trial court from proceeding in a child custody case over which the state of Alabama had jurisdiction. Commissioner Clay wrote for the court:

> Respondent takes the position that this Court is not authorized to issue a writ of prohibition where *the right to appeal* exists. The authorities cited do not sustain such a position, and Section

110 of the Constitution imposes no such limitation.

This Court has a broad discretion in the issuance of such writs, and each case must be adjudged on its particular merits. Our opinions have consistently distinguished between those cases: (1) where the inferior court lacks jurisdiction; and (2) where the court, having jurisdiction is proceeding erroneously. It is in the latter class of cases that we have emphasized the need for a showing of great injustice and irreparable injury for which there is no adequate remedy by appeal or otherwise. . . .

It has been held that *the remedy by way of appeal* is not the controlling consideration where the inferior court is without jurisdiction. . . .

If the Whitley Circuit Court lacks jurisdiction to proceed in this case, it would be a most inept ruling to deny the writ, require a trial on the merits, and then on an appeal be forced to reverse the case on the very question which is now before us. We therefore conclude that if the Whitley Circuit Court lacks jurisdiction of the subject matter of the action, petitioner should be entitled to his writ of prohibition.

*Id.* at 776–77 (citations omitted). The first two quoted paragraphs from *Chamblee* indicate that the existence of a remedy by appeal is a relevant, but not the controlling, factor in determining whether to issue a writ prohibiting a trial court from acting outside its jurisdiction. The last quoted paragraph concludes that the right of appeal was an inadequate remedy under the circumstances of that case.

*Bender v. Eaton, supra,* held, with respect to the court's authority to grant or deny any petition for a writ, that "[t]he exercise of this authority has no limits

except our judicial discretion, and each case must stand on its own merits." *Id.,* 343 S.W.2d at 800. The petitioner in *Bender* claimed that the trial court was acting erroneously within its jurisdiction by permitting discovery of privileged materials. *Bender* held that when that allegation is made, a showing of inadequate remedy by appeal becomes a prerequisite to consideration of the alleged error (as opposed to a mere factor to be considered). *Id.* at 801.

Thus, under *Chamblee* and *Bender,* whether to issue a writ was always discretionary, even when the trial court was acting outside its jurisdiction. However, in that circumstance, the existence of an adequate remedy by appeal was not controlling, but only a factor for the court to consider in exercising its discretion. But if the petition alleged only that the trial court was acting erroneously within its jurisdiction, a writ would issue *only if* it was shown that there was no adequate remedy by appeal *and* great injustice and irreparable harm would otherwise occur. As will be further explained in Part III(1) of this opinion, *infra, Bender* also held that great and irreparable harm *to the petitioner* is not an absolute prerequisite. *Id.* at 801.

In our 1981 opinion, *Shumaker v. Paxton, supra,* we held for the first time since 1915 that a writ could not be issued to prohibit a lower court from proceeding outside its jurisdiction absent a showing that there was no adequate remedy by appeal. *Id.,* 613 S.W.2d at 131.[4] *Shumaker* gave no explanation for this departure from *Chamblee,* and cited only *Evans v. Humphrey* as authority for the proposition. *Id.* As previously noted, *Evans* did not apply the "inadequate remedy by ap-

---

**4.** Nevertheless, *Shumaker* addressed the jurisdictional issue raised by the petition and con-

cluded that the trial court was *not* acting outside its jurisdiction. *Id.* at 132.

peal" requirement to cases where the lower court was acting outside its jurisdiction, but reiterated the *Duffin* rule, except for deletion of the phrase, "in all cases." *Shumaker* also inexplicably deleted the requirement that there must be no remedy through application to an intermediate court. *See Evans*, 135 S.W.2d at 917.[5] Obviously, the Court of Appeals should deny a petition for a writ to prohibit a district court from proceeding outside its jurisdiction when the petitioner could obtain the same remedy in circuit court. *Compare* KRS 23A.080(2) with the circuit court's former common law jurisdiction discussed in *Bank Lick Turnpike Co. v. Phelps, supra.* Likewise, this Court will not entertain an original petition for a writ against a circuit court when the same remedy is available in the Court of Appeals. All subsequent cases, including *Southeastern United Medigroup, supra,* holding or reciting that the requirement of an inadequate remedy by appeal is a prerequisite to the issuance of a writ prohibiting a trial court from proceeding outside its jurisdiction can be traced to *Shumaker* and/or the Court of Appeals' opinion in *Tipton v. Commonwealth, supra,* which relied on *Shumaker*'s inaccurate citation to *Evans. Tipton,* 770 S.W.2d at 241.

■ We conclude that the analyses in *Chamblee* and *Bender* were sound and now depart from those cases holding that the existence of an adequate remedy by appeal precludes the issuance of a writ to prohibit a trial court from acting outside its jurisdiction. We also reinstate the condition deleted by *Shumaker* that there must be no remedy through an application to an intermediate court. A more precise statement of the rule to which we now return is as follows:

A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

In *Hargis v. Parker,* Ky., 85 S.W. 704 (1905), a case decided only fourteen years after the adoption of Section 110 of the 1891 Constitution, our predecessor court wrote:

If it be true that the Fayette court is proceeding without jurisdiction, it is not substantial justice that it should be allowed to take the bodies of the complainants, confine them in jail without bail, as it might do at its discretion, subject the parties to enormous expense in defending the case, even if it went no further than a trial of the question of jurisdiction, and say to them, "Your remedy is solely by appeal if you have been wronged." We think [Section 110] of the Constitution, though it be deemed only declaratory of the common law on the subject, confers the power and jurisdiction on this court to intervene by the writ of prohibition to stay the inferior courts of the state from proceeding out of their jurisdiction. It may issue whether or not there is an appeal.

*Id.* at 706. *Hargis* was cited by *Chamblee, supra,* as authority for the proposition that the existence of a remedy by way of appeal does not control when the inferior court is

---

5. It is possible that the error in *Shumaker* was one of transcription since the opinion substituted "there is no adequate remedy by appeal" for *Evans's* "there is no remedy through an application to an intermediate court."

acting outside its jurisdiction. *Id.*, 249 S.W.2d at 777.

We have consistently issued writs to prohibit criminal proceedings when the lower court was acting outside of its jurisdiction. *See Peterson v. Shake*, 120 S.W.3d at 710 (circuit court without jurisdiction to try misdemeanor offense as a felony); *Spivey v. Jackson*, Ky., 602 S.W.2d 158 (1980) (circuit court without jurisdiction to try incarcerated defendant more than 180 days after motion for final disposition was properly filed under KRS 500.110); *Crowder v. Schlitz Brewing Co.*, 295 Ky. 822, 175 S.W.2d 1003 (1943) (quarterly court without jurisdiction to levy fine in excess of $100.00); *Pinkleton v. Lueke*, 265 Ky. 84, 95 S.W.2d 1103, 1106 (1936) (magistrate without jurisdiction to hold examining trial); *City of Bardstown v. Hurst*, 121 Ky. 119, 89 S.W. 147, 149 (1905) (city police court without jurisdiction to try defendant for offense committed outside city limits). Of course, if subsequently convicted of an offense greater than manslaughter in the second degree, Appellants would have a right to appeal and to raise the same jurisdictional issue they now raise by way of original action; we conclude, however, that the existence of that right is an inadequate remedy in this circumstance. To paraphrase Commissioner Clay:

> If [Judge Maricle] lacks jurisdiction to [reject these plea agreements], it would be a most inept ruling to deny the writ, require a trial on the merits, and then on an appeal be forced to reverse the case on the very question which is now before us.

*Chamblee*, 249 S.W.2d at 777. We turn now to the claim that Judge Maricle acted outside of his jurisdiction.

## II. JURISDICTION—SEPARATION OF POWERS.

Appellants assert that Judge Maricle acted outside his jurisdiction when he rejected the plea agreement because he thereby exercised powers belonging exclusively to the executive department of government. Our Constitution specifically articulates the doctrine of separation of powers.

> The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

Ky. Const. § 27.

> No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

Ky. Const. § 28.

> Perhaps no state forming a part of the national government of the United States has a Constitution whose language more emphatically separates and perpetuates what might be termed the American tripod form of government than does our Constitution ....

*Sibert v. Garrett*, 197 Ky. 17, 246 S.W. 455, 457 (1922). *See also Diemer v. Commonwealth*, Ky., 786 S.W.2d 861, 864 (1990) ("Kentucky is a strict adherent to the separation of powers doctrine.").

 The power to define crimes and assign their penalties belongs to the legislative department. KRS 500.020(1) (common law offenses abolished); *Cornelison v. Commonwealth*, Ky., 52 S.W.3d 570, 573 (2001) ("discretion to define the level of harm and the appropriate punishment is within purview of Legislature"); *cf. United States v. Evans*, 333 U.S. 483, 486, 68

S.Ct. 634, 636, 92 L.Ed. 823 (1948) ("[D]efining crimes and fixing penalties are legislative, not judicial functions."). The power to charge persons with crimes and to prosecute those charges belongs to the executive department. Ky. Const. § 81 (governor to see that laws are faithfully executed); KRS 15.725(1) (Commonwealth's attorney to prosecute all criminal violations tried in circuit court). *Cf. United States v. Nixon,* 418 U.S. 683, 693, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974) ("Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case."); *Moore v. Commonwealth,* Ky., 983 S.W.2d 479, 487 (1998) (prosecutor has broad discretion as to what crime to charge and what penalty to seek); *Commonwealth v. McKinney,* Ky.App., 594 S.W.2d 884, 888 (1979) (decision whether to prosecute and what charge to bring is within discretion of prosecutor). The power to conduct criminal trials, to adjudicate guilt, and to impose sentences within the penalty range prescribed by the legislature belongs to the judicial department. *People v. Pate,* 878 P.2d 685, 694 (Colo.1994) (en banc) (judiciary has exclusive power to impose sentences within limits determined by legislature); *People v. Spegal,* 5 Ill.2d 211, 125 N.E.2d 468, 472 (1955) (judiciary determines how cases should be tried); *State ex rel. Bray v. Russell,* 89 Ohio St.3d 132, 729 N.E.2d 359, 362 (2000) (determination of guilt and sentencing of criminal defendant is solely within province of judiciary).

Essentially, Appellants claim that since it lies within the prerogative of the executive department by and through the Commonwealth's attorney to determine what crime to charge and whether to prosecute it, an indictment "belongs" to the prosecutor who may prosecute, amend, or dismiss it at his or her discretion without interposure from the presiding judge. While that is or has been the law in some common law jurisdictions, *e.g., In re Confiscation Cases,* 74 U.S. (7 Wall.) 454, 457, 19 L.Ed. 196 (1868); *Baglioni v. Chief of Police,* 421 Mass. 229, 656 N.E.2d 1223, 1225 (1995); *State v. Tufts,* 56 N.H. 137 (1875), it is not the law of Kentucky.

Our predecessor court once stated, "An indictment can only be found and presented by a grand jury, and therefore no amendment of an indictment can be allowed." *Commonwealth v. Vanmeter,* 8 Ky. Op. 754, 755 (1876).[6] However, the law of the Commonwealth since at least 1854 has permitted a Commonwealth's attorney to *dismiss* an indictment but only *"with the permission of the court."* M.C. Johnson, Joshua Harlan & J.W. Stevenson, *Code of Practice in Criminal Cases* § 241 (eff. July 1, 1854) (emphasis added); *see also* John D. Carroll,[7] *Carroll's Code of Practice in Criminal Cases* ("Criminal Code") § 243 (1st ed. 1888). Similarly,

---

**6.** The United States Supreme Court reached the same conclusion in *Ex Parte Bain,* 121 U.S. 1, 8–13, 7 S.Ct. 781, 785–87, 30 L.Ed. 849 (1887), *overruled in part by United States v. Miller,* 471 U.S. 130, 144, 105 S.Ct. 1811, 1819, 85 L.Ed.2d 99 (1985) (*Bain* invalid insofar as it precludes amendment to lesser included offense). However, *Bain* does not affect our analysis because the Grand Jury Clause of the Fifth Amendment is not applicable to the states. *Hurtado v. California,* 110 U.S. 516, 534–35, 4 S.Ct. 111, 120, 28 L.Ed. 232 (1884).

**7.** In addition to compiling *Carroll's Kentucky Codes* (first compiled in 1888) and *Carroll's Kentucky Statutes* (first compiled in 1894 and officially adopted as the law of Kentucky in 1904), Judge Carroll also served as a delegate to the 1890 Constitutional Convention, as the first commissioner of the "old" court of appeals, and as a member of that court from 1907 until 1921, including two years as chief justice.

Kentucky Statute (KS) § 123 (1892 Ky. Acts, ch. 100, § 27) provided:

> Before the court shall permit any Commonwealth's or county attorney to dismiss any indictment or enter a nolle prosequi in any case, such attorney shall file a statement, in writing, setting forth the reasons for such dismissal or such failure to prosecute . . . .

(Emphasis added.) That requirement was also contained in KS 1127(4) (1893 Ky. Acts, ch. 182, § 1). Construing these provisions, our predecessor court held in *Commonwealth v. Davis*, 169 Ky. 650, 184 S.W. 1121 (1916):

> [T]he commonwealth attorney cannot dismiss an indictment without permission of the court, and will be permitted to do so only upon reasons deemed sufficient by the court. This necessarily vests in the circuit judge the right and duty to exercise a discretion in sustaining or overruling such a motion.

*Id.*, 184 S.W. at 1122 (citations omitted).[8] *See also Kidd v. Commonwealth*, 255 Ky. 498, 74 S.W.2d 944, 947 (1934) (court has discretion to grant or deny Commonwealth's attorney's request to dismiss indictment).

■ Concomitantly, subject to rare exceptions usually related to a defendant's claim of a denial of the right to a speedy trial,[9] a trial judge has no authority, absent consent of the Commonwealth's attorney, to dismiss, amend, or file away before trial a prosecution based on a good indictment. *See, e.g., Commonwealth v. Allen*, Ky., 980 S.W.2d 278, 281 (1998) (dismissal); *Commonwealth v. Hicks*, Ky., 869 S.W.2d 35, 37 (1994) (dismissal); *Allen v. Walter*, Ky., 534 S.W.2d 453, 455 (1976) (amendment); *Commonwealth v. Huddleston*, 283 Ky. 465, 141 S.W.2d 867 (1940) (dismissal); *Slater v. Commonwealth*, 239 Ky. 620, 40 S.W.2d 389, 391 (1931) (dismissal); *Com-*

---

**8.** In *Huff v. Commonwealth*, 217 Ky. 247, 289 S.W. 246, 247 (1926), the court noted that a Commonwealth's attorney could avoid the stricture of KS 1127 by filing away or continuing the prosecution, a procedure commonly used when, after issuance of an indictment, the defendant cannot be found within the jurisdiction, witnesses are unavailable, or it is deemed appropriate to abate the prosecution conditioned upon the defendant's compliance with certain requirements. *E.g., Commonwealth v. Jones*, 297 Ky. 534, 180 S.W.2d 558, 559 (1944); *Means v. Commonwealth*, 256 Ky. 30, 75 S.W.2d 546, 547 (1934) (abatement of prosecution conditioned upon defendant leaving the state); *Miller v. Commonwealth*, 192 Ky. 709, 234 S.W. 307, 309 (1921); *Jones v. Commonwealth*, 114 Ky. 599, 71 S.W. 643 (1903) (generally approving of the practice of filing away indictments in case where prosecutor was unprepared for trial); *Commonwealth v. Bottoms*, 105 Ky. 222, 48 S.W. 974, 975 (1899). The practice is regarded not as a dismissal, which would require a reindictment, but as an indefinite continuance. *Id.*, 48 S.W. at 975. Similarly, in *United States v. Greater Blouse, Skirt & Neckwear Contractors, Inc.*, 228 F.Supp. 483

(S.D.N.Y.1964), the court noted in construing Federal Rule of Criminal Procedure (FRCrP) 48(a) that if the court withheld its permission to dismiss an indictment, the Attorney General could simply decline to move the case for trial because the doctrine of separation of powers would deprive the court of authority to compel prosecution. *Id.* at 489.

**9.** *Strunk v. United States*, 412 U.S. 434, 440, 93 S.Ct. 2260, 2263, 37 L.Ed.2d 56 (1973) (dismissal is the only possible remedy for denial of Sixth Amendment right to speedy trial); *Rosen v. Watson*, Ky., 103 S.W.3d 25, 30 (2003) (writ properly issued to preclude prosecution where Commonwealth failed to comply with statutory speedy trial right granted in KRS 500.110); *Lovitt v. Commonwealth*, Ky., 592 S.W.2d 133, 134 (1979) (per curiam) (failure of Commonwealth to comply with Interstate Agreement on Detainers, KRS 440.450, Art. III(1), required dismissal). *See also Commonwealth v. Baker*, Ky.App., 11 S.W.3d 585, 588–90 (2000) (indictment properly dismissed upon proof that prosecutor knowingly or intentionally presented false, misleading or perjured testimony to grand jury and defendant was prejudiced as a result).

monwealth v. Flynn, 161 Ky. 289, 170 S.W. 617, 618 (1914) (dismissal); Commonwealth v. Hughes, 153 Ky. 34, 154 S.W. 399, 401 (1913) (dismissal); Commonwealth v. Cundiff, 149 Ky. 37, 147 S.W. 767, 768 (1912) (filed away); Commonwealth v. Self, Ky.App., 802 S.W.2d 940, 941–42 (1990) (dismissal); Commonwealth v. McKinney, 594 S.W.2d at 888 (dismissal). Cf. Flynt v. Commonwealth, Ky., 105 S.W.3d 415, 423–24 (2003) (pretrial diversion ordered over prosecutor's objection); Commonwealth v. Isham, Ky., 98 S.W.3d 59, 61 (2003) (dismissal of criminal complaint by district court); Commonwealth v. Ryan, 5 S.W.3d at 117 (pretrial exclusion of death penalty over prosecutor's objection).

In Cundiff, supra, our predecessor court explained the relationship between prosecutor and judge as follows:

> First ... where an indictment, for any cause, is to be dismissed or filed away, it can only be done upon motion of the commonwealth's attorney, or the county attorney who may be acting for him; and, second, that it cannot be done by even the commonwealth's or county attorney, except the reasons therefore be reduced to writing, and the court, upon having considered the reasons upon which the discontinuance of the prosecution is sought, gives his consent that it may be done. A prosecution by indictment is a litigation in which the state is plaintiff or complainant, and is represented by the commonwealth's attorney. The judge does not represent the state any more than he does the defendant in the prosecution. His right to control the prosecution goes only to the extent of determining whether or not the indictment is good on demurrer. If he holds it to be a good indictment, he is without power to direct its dismissal.

Id., 147 S.W. at 768 (emphasis added). See also Slater, 40 S.W.2d at 391 ("The dismissal must be by the concurrent action of both the prosecuting attorney and the judge.").

In 1962, the General Assembly repealed the Criminal Code, 1962 Ky. Acts, ch. 234, § 61(2), and replaced it with the Rules of Criminal Procedure. The Act adopting the new rules states, inter alia, as follows:

## PREAMBLE

The Criminal Code Committee, established by the General Assembly for the purpose of improving criminal procedure in the courts of the Commonwealth, having reported its recommendations to the Legislative Research Commission, the Commission having approved the recommendations and formulated plans for their execution, and the Court of Appeals being in accord with these plans, the General Assembly establishes this revised procedure in criminal cases ....

. . .

It is therefore declared to be the policy of the General Assembly ... that prescription of rules governing details of procedure will be left to the discretion of the Judicial Department after the effective date of this Act [emphasis added];

. . .

. . .

[S]ubject to the rule-making authority of the Court of Appeals[,]

Be it enacted by the General Assembly of the Commonwealth of Kentucky:

Section 0. The rules in this section are prescribed in accordance with the principle, finding and declaration contained in the preamble to this Act, and with modifications thereof shall be known as the Rules of Criminal Proce-

dure, and may be cited by the abbreviation, 'RCr' or by the full title.

1962 Ky. Acts, ch. 234, Preamble, § 0.

Whereas, the revision of criminal procedure effected by this Act is comprehensive ... this Act shall become effective on January 1, 1963. The Rules of Criminal Procedure shall govern further proceedings and prosecutions pending on that date ....

*Id.* § 63.

The Act set forth the new Rules in the same order and enumeration as they exist today. Thus, contrary to the suggestion in the dissenting opinion, *post* at 33, the Rules of Criminal Procedure were enacted by the General Assembly, subject to the power of the Judicial Department to amend or repeal them.[10] The Act did not contain an expiration date or a self-repealer, and the General Assembly has never repealed any portion of it. Consistent with former Criminal Code § 243, the new Criminal Rule (RCr) 9.64, as enacted in 1962, read:

The attorney for the Commonwealth *with the permission of the court,* may dismiss the indictment, information or complaint prior to the submission of the case.

*Id.* at § 0, Rule 9.64 (emphasis added). As subsequently amended by this Court, the Rule now reads:

The attorney for the Commonwealth, *with the permission of the court,* may

dismiss the indictment, information, complaint or uniform citation prior to the swearing of the jury or, in a non-jury case, prior to the swearing of the first witness.

RCr 9.64 (emphasis added.) Thus with respect to the subject at issue, the Rule remains the same today as when enacted by the General Assembly in 1962.

As enacted in 1962, RCr 6.16 read:

The court *may permit* an indictment or information *to be amended* any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

1962 Ky. Acts, ch. 234, § 0, Rule 6.16 (emphasis added).[11] Although a second sentence was subsequently added to the Rule by this Court giving a defendant the right to a continuance "[i]f justice requires," the language of the original legislative enactment remains unchanged. Thus, it is simply inaccurate to say, as does the dissenting opinion, *post* at 33, that there is no legislative authority requiring judicial approval of a prosecutor's decision to amend or dismiss an indictment. Chapter 234 of the 1962 Kentucky Acts provides that authority until repealed by the General Assembly.

 The plea agreements rejected in the underlying action include both dismissals and amendments of the indictment, both of which require judicial approval. As with former Criminal Code § 243,

---

**10.** Although our predecessor court stated in *Lunsford v. Commonwealth*, Ky., 436 S.W.2d 512, 514 (1969), that "we deduce that the General Assembly did not in fact intend to enact any of the Rules prescribed in the Act" it cited for that proposition only Section 60(2) of the Act which dealt with the effect of subsequent legislative amendments. *Lunsford* has never since been cited for such a proposition; and, in retrospect, we can discern no intent from the language, "Be it enacted ..." except

an intent to "enact." Of course, a court has no authority to repeal a legislative enactment.

**11.** The rule is consistent with the holding in *United States v. Miller, supra* note 6, that an indictment may be amended to charge a lesser included offense to the one charged in the indictment but not to charge a new or different offense to the defendant's prejudice. *Frizzell v. Commonwealth*, Ky., 511 S.W.2d 200 (1974).

whether to grant or withhold that approval is a matter of judicial discretion. Of course, that only begs the question; for if RCr 6.16 and RCr 9.64 or, for that matter, provisions of our former statutes and criminal codes, violate the requirement of separation of powers, then they are unconstitutional and afford no basis for our case law to the contrary. Although this is an issue of first impression in Kentucky, it is one that has been addressed and resolved in the federal courts.

Rule 9.64 resembles Federal Rule of Criminal Procedure (FRCrP) 48(a) which provides, *inter alia,* that "[t]he government may, *with leave of court,* dismiss an indictment, information, or complaint." (Emphasis added.) The accompanying advisory committee notes stated that the adoption of this provision would "change the common-law rule [in federal courts] that the public prosecutor may enter a nolle prosequi in his discretion, without any action by the court," and "permit the filing of a nolle prosequi only by leave of court . . . similar to the rule now prevailing in many States." FRCrP 48(a) advisory committee notes, n.1 (1944) (citation omitted). The original draft submitted by the advisory committee had included a requirement identical to that in our former statutes, KS 27 and 1127, *supra,* that the prosecution provide a statement of its reasons for dismissal. The Supreme Court struck this provision and replaced it with the "by leave of court" provision. Mark S. Rhodes, *Orfield's Criminal Procedure Under the Federal Rules* § 48:11, at 251 (2d ed.1987).

In the landmark case of *United States v. Cowan,* 524 F.2d 504 (5th Cir.1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976), the district court denied a joint motion by the government and the defendant to dismiss the indictment. The Attorney General argued on appeal that the "by leave of court" provision violated the constitutional requirement of separation of powers. Like Section 81 of the Kentucky Constitution, Article II, Section 3, of the United States Constitution vests the power "to take Care that the Laws be faithfully executed" in the executive branch of government; and similar to KRS 15.725(1), 28 U.S.C. § 547(1) vests in the local United States Attorney authority to prosecute all offenses against the United States. *Cowan* drew a distinction between the *power to initiate and control* a criminal proceeding and the *power to terminate* it. *Id.* at 507–09 (distinguishing *United States v. Cox,* 342 F.2d 167, 171 (5th Cir.1965)). Citing *United States v. Nixon,* 418 U.S. at 707, 94 S.Ct. at 3107, for the proposition that "the separate powers were not intended to operate with absolute independence," *Cowan,* 524 F.2d at 512, the court held:

> We think the rule should and can be construed to preserve the essential judicial function of protecting the public interest in the evenhanded administration of criminal justice without encroaching on the primary duty of the Executive to take care that the laws are faithfully executed. The resulting balance of power is precisely what the Framers intended. . . . [T]he phrase "by leave of court" in Rule 48(a) was intended to modify and condition the absolute power of the Executive, consistently with the Framer's [sic] concept of Separation of Powers, by erecting a check on the abuse of Executive prerogatives. . . . The rule was not promulgated to shift absolute power from the Executive to the Judicial Branch. Rather, it was intended as a power to check power.

*Id.* at 512–13. Thus, the "by leave of court" requirement of Rule 48(a) does not violate the doctrine of separation of powers provided that judicial discretion is properly restrained (as further discussed in Part

III(2) of this opinion, *infra* ). *Id.* at 513. The principle established in *Cowan* comports with our enunciation in *Smothers v. Lewis*, Ky., 672 S.W.2d 62 (1984), that "a court, once having obtained jurisdiction of a cause of action, has, incidental to its constitutional grant of power, inherent power to do all things reasonably necessary to the administration of justice in the case before it." *Id.* at 64. We conclude that the *Cowan* analysis also applies to the separation of powers required by Section 28 of our Constitution.

■ Another reason why RCr 6.16 and RCr 9.64 do not violate the requirement of separation of powers is implicit in the former common law rule cited in *Commonwealth v. Vanmeter, supra,* that an indictment once issued could not be amended, *i.e.,* the indictment is a charge by the grand jury, not the prosecutor.[12] *Id.,* 8 Ky. Op. at 755. Section 12 of our Constitution provides that "[n]o person, for an indictable offense, shall be proceeded against criminally by information . . . ." [13]

> "Indictment" is a technical word, peculiar to Anglo Saxon jurisprudence and implies the finding of a grand jury, as does also the word "presentment." "Information" is a written accusation of a crime, preferred by a public prosecuting officer without the intervention of a grand jury.

*Rice v. Commonwealth,* Ky., 288 S.W.2d 635, 637 (1956) (citation omitted).

We have stated in a different context that "[a] grand jury is a part of the court, and under judicial control, so there can be no doubt that a session of the grand jury is a proceeding in a circuit court." *Bowling v. Sinnette,* Ky., 666 S.W.2d 743, 745 (1984); *Greenwell v. Commonwealth,* Ky., 317 S.W.2d 859, 861 (1958). *See also Nelson v. Shake,* Ky., 82 S.W.3d 914, 916 (2002). The grand jury is summoned and impaneled by the circuit court, KRS 29A.210(1), RCr 5.02; its witnesses are subpoenaed by the circuit court, RCr 5.06, and their testimony can be compelled by the circuit court's contempt powers, RCr 5.12; and any indictments by the grand jury are returned to the circuit court. RCr 5.20. *See also Brown v. United States,* 359 U.S. 41, 49, 79 S.Ct. 539, 546, 3 L.Ed.2d 609 (1959) (grand jury, though clothed with great independence, remains an appendage of the court, powerless to function without the court's aid), *overruled on other grounds by Harris v. United States,* 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965). This does not mean, however, that the court "controls" the grand jury's proceedings. "The grand jury's functional independence from the Judicial Branch is evident both in the scope of its power to investigate criminal wrongdoing and in the manner in which that power is exercised." *United States v. Williams,* 504 U.S. 36, 48, 112 S.Ct. 1735, 1742, 118 L.Ed.2d 352 (1992).

Nor does the Commonwealth's attorney control the grand jury. The Commonwealth's attorney is the person with "primary responsibility [for] present[ing] evidence" to the grand jury concerning alleged criminal violations. KRS 15.725(1). The Commonwealth's attorney must, when requested, or may, on personal initiative, attend the grand jury for

---

12. There is federal authority that a grand jury cannot issue an indictment over the objection of the United States Attorney. *United States v. Cox,* 342 F.2d at 171–72. That holding, however, is not binding on us. *Hurtado v. California, supra* note 6, at 534–35, 4 S.Ct. at 111 (Grand Jury Clause of Fifth Amendment not applicable to states).

13. However, a defendant can waive this requirement and agree to be proceeded against by information. *Malone v. Commonwealth,* Ky., 30 S.W.3d 180, 184 (2000).

the purpose of questioning witnesses and giving legal advice. RCr 5.14(1). However, the grand jurors may choose to hear no more evidence than that which suffices to convince them that an indictment is warranted, *United States v. Williams, supra,* at 53, 112 S.Ct. at 1745, and may exclude the Commonwealth's attorney while they question witnesses, themselves. RCr 5.02. The Commonwealth's attorney may not be present while the grand jury is deliberating or voting on an indictment. RCr 5.18. Finally, though the Commonwealth's attorney is required to draft indictments upon request of the grand jury, RCr 5.14(1), the Commonwealth's attorney does not sign the indictment, RCr 6.06, *Miller v. Commonwealth,* 270 Ky. 378, 109 S.W.2d 841, 845 (1936),[14] and the indictments are returned not to the Commonwealth's attorney, but to the court. RCr 5.20.

 Nothing in our Constitution, statutes, or rules classifies the grand jury as an arm of the Commonwealth's attorney. The grand jury is "an investigative body acting independently of either prosecuting attorney or judge." *United States v. Dionisio,* 410 U.S. 1, 16, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973) (internal quotation and citation omitted). "The hallmark of the grand jury is its independence from outside influence." *Democratic Party of Ky. v. Graham,* Ky., 976 S.W.2d 423, 426 (1998). "[I]t serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will." *Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962).

Because the grand jury is an agency of neither the court nor the prosecutor, but an independent agency of constitutional origin, it follows, *ipso facto,* that RCr 6.16 and RCr 9.64, which require the court's permission to amend or dismiss an indictment, do not violate Section 28 by authorizing the exercise of a power properly belonging to the executive department. Thus, Judge Maricle did not act outside his jurisdiction in denying the motions to dismiss some counts of the indictment and to amend others.

## III. CLAIMS OF ERROR.

### 1. Preliminary determinations.

In addition to reiterating the rule that a writ prohibiting a trial court from acting erroneously within its jurisdiction will issue only when there is "no adequate remedy by appeal or otherwise" and the petitioner will suffer "great and irreparable injury"[15] if the petition is not granted, *Bender v. Eaton, supra,* further explained that those requirements are but "a practical and convenient formula for determining, *prior to deciding the issue of alleged error,* if petitioner may avail himself of this remedy." *Id.,* 343 S.W.2d at 801. In other words, only after determining that the prerequisites exist will the court decide whether an error occurred for which a writ should issue.

---

**14.** *Compare* federal law as applied in *United States v. Cox,* 342 F.2d at 171–72 (Court cannot force United States Attorney to sign indictment and indictment not signed by United States Attorney is invalid.).

**15.** Note the deletion of the word "injustice." It was reinserted in *Southeastern United Medigroup,* 952 S.W.2d at 199, and is included in our present formulation of the rule, discussed in Part I of this opinion, *supra. See Commonwealth v. Ryan,* 5 S.W.3d at 115.

■ Whether the right of appeal is an adequate remedy is an issue necessarily determined on a case-by-case basis. We have consistently found the right of appeal to be an adequate remedy when the petition of a criminal defendant seeks only to correct procedural or trial errors. *E.g., Cavender v. Miller*, Ky., 984 S.W.2d 848, 849 (1998) (ruling with respect to defendant's right to discovery); *Futrell v. Shadoan*, Ky., 828 S.W.2d 649, 651 (1992) (evidentiary ruling); *Barnes v. Ashcraft*, Ky., 490 S.W.2d 484, 486 (1973) (order overruling motion to void prior conviction used for penalty enhancement); *Bentley v. Moore*, Ky., 239 S.W.2d 237, 237–38 (1951) (order denying change of venue); *Brewer v. Vallandingham*, 231 Ky. 510, 21 S.W.2d 831, 832 (1929) (consideration of Commonwealth's motion to change venue); *Fish v. Benton*, 138 Ky. 644, 128 S.W. 1067 (1910) (order changing venue). However, we have found the right of appeal inadequate when the petition of a criminal defendant seeks to prohibit a proceeding allegedly barred by the constitutional proscription against double jeopardy. *E.g., Commonwealth v. Stephenson*, Ky., 82 S.W.3d 876, 880 (2002); *St. Clair v. Roark*, Ky., 10 S.W.3d 482, 485 (2000); *Crawley v. Kunzman*, Ky., 585 S.W.2d 387, 388 (1979) ("The right of appeal is not an adequate remedy against double jeopardy."); *but see Jones v. Hogg*, Ky., 639 S.W.2d 543, 543–44 (1982) (*Crawley*'s holding applies only when the petitioner has been acquitted and faces retrial).

■ The claim in this case is more akin to the latter class of cases than to the former; for Appellants essentially claim immunity from further prosecution. If Judge Maricle erred in rejecting a plea agreement that would have permitted Appellants to plead guilty to a lesser included offense, subjecting them to a trial for the greater offense, though technically not double jeopardy, would have the same effect. *Cf. Price v. Georgia*, 398 U.S. 323, 326–27, 90 S.Ct. 1757, 1760, 26 L.Ed.2d 300 (1970) (conviction of lesser included offense operates as acquittal of offense of higher degree so that, if the conviction is reversed for a new trial, the defendant cannot be retried for the higher offense); *Klee v. Lair*, Ky., 621 S.W.2d 892, 893 (1981) (same). Applying the logic of *Hargis v. Parker, supra*, that it is not enough under this circumstance to say to Appellants, "Your remedy is solely by appeal if you have been wronged," 85 S.W. at 706, we conclude that the right of appeal is inadequate in this circumstance.

■ We turn now to the requirement of "great injustice and irreparable injury." In *Litteral v. Woods*, 223 Ky. 582, 4 S.W.2d 395 (1928), our predecessor court defined great injustice and irreparable injury as "incalculable damage to the applicant ... *either to the liberty of his person*, or to his property rights, or other far-reaching and conjectural consequences." *Id.*, 4 S.W.2d at 396–97 (emphasis added). *Litteral* cited as an example *Natural Gas Products Co. v. Thurman*, 205 Ky. 100, 265 S.W. 475 (1924), where the failure to issue the writ would have required the closing of a newly constructed and fully operational manufacturing plant. Distinguishing *Thurman, Litteral* held that no "great and irreparable injury" would result from the petitioner's temporary loss of a judgment to which he believed himself entitled in the event of a correct ruling. *Id.*, 4 S.W.2d at 398; *see also Farmers Nat'l Bank of Danville v. Speckman*, 312 Ky. 106, 226 S.W.2d 315, 317 (1949) (delay and expense of appeal is not irreparable injury); *Osborn v. Wolfford*, 239 Ky. 470, 39 S.W.2d 672, 673 (1931) (" '[G]reat and irreparable injury' ... [is] not such an injury as is usually suffered and sustained by a losing litigant upon a trial of his case in a court having

jurisdiction thereof, *i.e.*, a mere failure to succeed in that litigation, followed by the loss of that which success might have brought him ... but great and ruinous loss ... for which there was no remedy.").

*Litteral, Farmers National Bank*, and *Osborn* were civil cases, and *Litteral* specifically identified damage to a person's liberty as "great injustice and irreparable injury." *Id.*, 4 S.W.2d at 397. Nevertheless, if Appellants were convicted of murder and sentenced to death, and then obtained a reversal on appeal, their liberty interests would likely be no more affected than if they were permitted to plead guilty to a Class C felony and sentenced to ten years imprisonment. However, *Bender v. Eaton, supra*, also held that a finding of "great injustice and irreparable injury" is not an absolute prerequisite to considering the merits of a claim of error.

> Thus we find that in certain special cases this Court will entertain a petition for prohibition in the absence of a showing of specific great and irreparable injury to the petitioner, provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration. It may be observed that in such a situation the court is recognizing that if it fails to act the administration of justice generally will suffer the great and irreparable injury.

*Id.* at 801; *see also Roman Catholic Diocese of Lexington v. Noble*, Ky., 92 S.W.3d 724, 729 (2002). We conclude that if Judge Maricle erred in rejecting Appellants' plea agreements, which would unnecessarily subject Appellants to another trial for double murder with possible sentences of death and a lengthy appeal, such would constitute a miscarriage of justice and would disrupt the orderly administration of justice. Thus, we proceed to the merits of the claims of error.

### 2. Rejection of plea agreement.

▇▇ "Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." *Newman v. United States*, 382 F.2d 479, 480 (D.C.Cir.1967). Thus, "[a] judge in our system does not have the authority to tell prosecutors which crimes to prosecute or when to prosecute them." *United States v. Giannattasio*, 979 F.2d 98, 100 (7th Cir.1992). "Courts do not know which charges are best initiated at which time, which allocation of prosecutorial resources is most efficient, or the relative strengths of various cases and charges." *United States v. Miller*, 722 F.2d 562, 565 (9th Cir.1983) (citations and internal quotes omitted). Thus, we start with the presumption that the party charged with the prosecution of a case is in the best position to evaluate the probability of its success.

> The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed *unless clearly contrary to manifest public interest.*

*United States v. Cowan*, 524 F.2d at 513 (emphasis added). *See also Rinaldi v. United States*, 434 U.S. 22, 29, 98 S.Ct. 81, 85, 54 L.Ed.2d 207 (1977) ("[T]he District Court was empowered to withhold leave if the Government's decision to terminate this prosecution clearly disserved the public interest.") (citing *Cowan* ). "Unless the court finds that the prosecutor is clearly

motivated by considerations other than his assessment of the public interest, it must grant the motion to dismiss." *United States v. Hamm*, 659 F.2d 624, 630 (5th Cir.1981). Factors that indicate a motivation other than an assessment of the public interest include the acceptance of a bribe, the desire to attend a social event rather than trial, or personal dislike of the victim of the crime. *Id.* (quoting *In re Washington*, 544 F.2d 203, 212–13 (5th Cir.1976) (Hill, J., dissenting)). These examples do not exclude other factors contrary to the manifest public interest. *Id.* n. 19. No one in this case suggests that the special prosecutor was motivated by anything other than "his assessment of the public interest." However, his motions to dismiss certain counts of the indictment in this case were not independent of the other aspects of the plea agreements. Each agreement required the dismissal of some charges and the amendment of another in exchange for a guilty plea to the amended charge. Since the motions to dismiss were integral to the plea agreements, the issue becomes whether Judge Maricle abused his discretion in rejecting the plea agreements.

■ RCr 8.08 provides that "[t]he court may refuse to accept a plea of guilty ...." Our pronouncements on the extent of a trial court's discretion under this rule have been arguably inconsistent. *Compare Skinner v. Commonwealth*, Ky., 864 S.W.2d 290, 294 (1993) ("[T]he court 'may refuse to accept a plea of guilty.' The

discretion of the trial court exists whether the proposed guilty plea is offered with or without consideration in the form of a plea agreement.") (quoting RCr 8.08), *with Commonwealth v. Corey*, Ky., 826 S.W.2d 319, 321 (1992) ("a defendant has an absolute right to unconditionally plead guilty to the crime charged in the indictment"). Federal trial judges have even greater discretion to refuse to accept a guilty plea. *See Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) ("There is, of course, no absolute right to have a guilty plea accepted. A court may reject a plea in exercise of sound judicial discretion.") (citations omitted); *North Carolina v. Alford*, 400 U.S. 25, 38 n.11, 91 S.Ct. 160, 168 n.11, 27 L.Ed.2d 162 n.11 (1970) ("A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court ...."). However, it is clear that in Kentucky, a defendant has no right to plead guilty to a lesser included offense for the purpose of precluding conviction of the indicted offense. *Cobb v. Commonwealth*, Ky.App., 821 S.W.2d 817, 818 (1992).

■ There is, of course, no constitutional right to plea bargain. *Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977); *Commonwealth v. Reyes*, Ky., 764 S.W.2d 62, 64 (1989). While a defendant may have the right to hold the prosecution to its bargain in certain circumstances,[16] this right does

---

16. There is no allegation here that the prosecutor did not carry out his portion of the plea agreement, *Reyes*, 764 S.W.2d at 65 (the judge simply did not approve it); or that Judge Maricle ever indicated concurrence in the agreement, *id.* at 66; *cf. Haight v. Commonwealth*, Ky., 760 S.W.2d 84, 88–89 (1988) (defendant could withdraw guilty plea where trial court imposed death penalty after insinuating he would honor recommendation that it not be imposed); or that Appellants acted in

detrimental reliance on the agreement. *Fraser v. Commonwealth*, Ky., 59 S.W.3d 448, 458 (2001); *Matheny v. Commonwealth*, Ky., 37 S.W.3d 756, 758 (2001) (defendant having changed his plea in reliance on the agreement, the prosecutor was required to make the sentencing recommendation to which he had agreed); *Putty v. Commonwealth*, Ky., 30 S.W.3d 156, 159 n. 1 (2000); *Smith v. Commonwealth*, Ky., 845 S.W.2d 534, 537 (1993) (reversal for a new penalty phase required

not attain constitutional significance until the plea agreement is executed. "A plea bargain standing alone is without constitutional significance; in itself, it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." *Mabry v. Johnson*, 467 U.S. 504, 507, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984); *see also Allen v. Walter*, Ky., 534 S.W.2d 453, 455 (1976) (per curiam) ("The order of the trial court that is under attack here has not been signed, hence the guilty plea has not been officially accepted. In this status the defendant is as free to withdraw it as the trial court is to accept or reject it."); *compare Matheny v. Commonwealth*, *supra* note 16, at 758 ("Once the trial court accepted Matheny's plea, the plea agreement became binding on the Commonwealth and Matheny was entitled to enforce it.").

Federal courts generally recognize three types of plea bargains. A "sentence bargain" is an agreement in which the prosecutor agrees to recommend or not to oppose a particular sentence in exchange for a guilty plea to the original charge. *Miller*, 722 F.2d at 563. Since sentencing is a function of the judiciary, a judge's discretion to accept or reject a sentence bargain is unfettered. *United States v. Robertson*, 45 F.3d 1423, 1437 (10th Cir.1995); *United States v. Adams*, 634 F.2d 830, 835 (5th Cir.1981), *superseded by regulation on other grounds as stated in United States v. Diaz*, 138 F.3d 1359, 1364 (11th Cir. 1998). A "charge bargain," is an agreement by the prosecutor to reduce the original charge in exchange for the defendant's agreement to plead guilty to the reduced charge, *United States v. Pimentel*, 932

F.2d 1029, 1033 (2d Cir.1991), and/or to dismiss some charges in exchange for pleas of guilty to others. *United States v. Carrigan*, 778 F.2d 1454, 1462 (10th Cir. 1985). A "hybrid bargain"· is a charge bargain accompanied by an agreement by the prosecutor to recommend or not oppose a particular sentence in exchange for a plea of guilty to the reduced charges. *Robertson*, 45 F.3d at 1437. Charge bargains affect the court's sentencing authority only incidentally, in the same manner as a prosecutor's decision whether to initiate charges *restrains the court's sentencing powers. Id.* at 1438; *see also Carrigan*, 778 F.2d at 1464. Hybrid bargains implicate not only the prosecutorial authority of the Executive but also the adjudicatory and sentencing authority of the Judiciary and the discretion of a trial court to accept or reject a guilty plea. *Robertson*, 45 F.3d at 1438.

Federal courts must reject plea agreements that undermine the federal sentencing guidelines. The following comments from the Senate Judiciary Committee report regarding proposed 28 U.S.C. § 994(a)(2)(D) (now 28 U.S.C. § 994(a)(2)(E)) explain the underlying rationale:

The concern is that the prosecutor will use the plea bargaining process to circumvent the guidelines recommendation .... The bill contains a provision designed to avoid this possibility. Under proposed 28 U.S.C. 994(a)(2)(D), the Sentencing Commission is directed to issue policy statements for consideration by Federal judges in deciding whether to accept a plea agreement. This guidance will assure that judges can examine plea agreements to make certain that prosecutors have not used plea bargain-

---

when prosecutor represented to defendant that the case would be tried as a non-capital

case, but later sought the death penalty).

ing to undermine the sentencing guidelines.

S.Rep. No. 225–98, at 63 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3246. *See also United States v. Banuelos–Rodriguez,* 215 F.3d 969, 976 (9th Cir.2000) (discussing and quoting same). Accordingly, Section 6B1.2(a) of the United States Sentencing Guidelines (U.S.S.G.) provides that:

> In the case of a plea agreement that includes the dismissal of any charges or an agreement not to pursue potential charges, the court *may accept* the agreement if the court determines, *for reasons stated on the record,* that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines.

U.S. Sentencing Guidelines Manual § 6B1.2(a) (emphasis added) (internal citation omitted). The Commentary to this provision in the Guidelines explains that "when the dismissal of charges or agreement not to pursue potential charges is contingent upon acceptance of a plea agreement, the court's authority to adjudicate guilt and impose sentence is implicated ...." *Id.* cmt. Thus, federal trial courts are required to exercise their power under FRCrP 11(c)(1)(3) to ensure that plea agreements reflect the seriousness of the underlying criminal behavior and the statutorily contemplated sentencing range. The same concerns apply here where our General Assembly has established sentencing guidelines, though less rigid than federal guidelines, by providing maximum and minimum penalties applicable to each offense. KRS 532.060 (imprisonment for felonies); KRS 532.090 (imprisonment for misdemeanors); KRS 534.030 (fines for felonies); KRS 534.040 (fines for misde-

meanors and violations); KRS 534.050 (fines for corporations).

We said in *Commonwealth v. Corey, supra,* that plea agreements are "subject to the approval of the court," *id.,* 826 S.W.2d at 320, and federal law is in accord. *United States v. Sandles,* 80 F.3d 1145, 1147 (7th Cir.1996) ("We review the court's decision to accept or reject a plea agreement for abuse of discretion."); FRCrP 11 advisory committee's notes (1974) ("[t]he plea agreement procedure does not attempt to define criteria for the acceptance or rejection of a plea agreement. Such a decision is left to the discretion of the individual trial judge."). Thus, although a federal court may deny a prosecutor's independent motion to dismiss an indictment under FRCrP 48(a) only when the motion is "clearly contrary to manifest public interest," *Cowan,* 524 F.2d at 513, its discretion under FRCrP 11(c)(3)(A) is much broader, because a plea agreement permits a prosecutor to exercise substantial control over the judge's sentencing power. *Pimentel,* 932 F.2d at 1033 (discretion to reject plea agreement reducing charges is less limited than discretion to refuse a motion to dismiss); *United States v. Escobar Noble,* 653 F.2d 34, 37 (1st Cir.1981) ("Plea bargains ... go to the traditionally judicial function of determining what penalty to impose."); *United States v. Bean,* 564 F.2d 700, 704 (5th Cir.1977) ("Although the plea bargain was cast in the form of a dismissal of [a] count ... the district judge properly exercised reasonable discretion in rejecting the plea bargain in order to impose an appropriate sentence ...."). A judge's sentencing discretion is necessarily confined to the charges in the indictment and the range of penalties assigned to those charges. "Since the counts dismissed pursuant to plea bargains often carry heavier penalties than the counts for which a guilty plea is entered, a plea bargain to dismiss charges is an indirect effort to limit the sentencing

power of the judge." *Id.; see also United States v. Torres–Echavarria*, 129 F.3d 692, 696 (2d Cir.1997) ("[W]hen the dismissal of charges or agreement not to pursue potential charges is conditioned on acceptance of a plea agreement, the court's authority to adjudicate guilt and impose sentence is implicated, and the court is to determine whether or not dismissal of charges will undermine the sentencing guidelines."); *Carrigan*, 778 F.2d at 1464 ("The ultimate effect of the dismissal of charges against [the defendant] under the plea bargain was to restrict the district court's ability to impose what it considered an appropriate sentence . . . .").

Thus, although a court may not adopt a categorical policy to reject all charge (or hybrid) bargains, *Miller*, 722 F.2d at 564–65, its discretion to accept or reject such an agreement is limited only by the requirement that it independently review each bargain placed before it, and set forth in the record both the prosecutor's reasons for forming the bargain and the court's justification for rejecting it. *Id.* at 566 (citing *United States v. Ammidown*, 497 F.2d 615, 623 (D.C.Cir.1973)). "[R]equiring district courts to articulate a sound reason for rejecting a plea is the surest way to foster the sound exercise of judicial discretion." *United States v. Moore*, 916 F.2d 1131, 1136 (6th Cir.1990). We agree.

 To summarize federal law on this subject, an "independent" motion by a prosecutor to dismiss or amend an indictment must be sustained unless clearly contrary to manifest public interest. *Cowan*, 524 F.2d at 513. A "sentence bargain," which does not involve dismissal or amendment of any charges but does involve a recommendation or agreement not to oppose a particular sentence, can be approved or rejected in the discretion of the trial court. *Robertson*, 45 F.3d at 1437. A "charge bargain," which dismisses or amends one or more charges in exchange for a guilty plea to the reduced charges, or a "hybrid bargain," which is a charge bargain with an additional agreement with respect to sentencing, can be approved or rejected in the discretion of the trial court, *Miller*, 722 F.2d at 566, but the trial court must articulate the prosecutor's reasons for forming the bargain and the court's reasons for rejecting it.[17] *Id.; Ammidown*, 497 F.2d at 623. While these rules are not binding on the states, *Hurtado v. California, supra* note 6, we conclude that they establish sound and reasonable guidelines. Thus, we adopt these principles for Kentucky.

 Because the sentence recommendation was the maximum sentence for the reduced charge, the plea bargain in the underlying case was a charge bargain rather than a hybrid bargain. The prosecutor's reasons for forming the bargain were stated in the written plea agreement. The parties agree that Judge Maricle stated on the record that his reason for rejecting the agreement was because it was "too lenient." Thus, there was substantial compliance with the requirements of *Miller* and *Ammidown, supra.* The issue becomes whether Judge Maricle abused his discretion in rejecting the agreement as "too lenient."

 While we have no precedent on this issue, federal courts have recognized, both before and after the adoption of the sentencing guidelines, that excessive le-

---

17. Under sentencing guidelines requirements, federal courts must also state their reasons for *accepting* charge or hybrid bargains. U.S. Sentencing Guideline Manual § 6B1.2(a). That is not the issue here and our sentencing statutes are sufficiently dissimilar from the federal sentencing guidelines that we perceive no need to impose that requirement on our trial courts.

niency is an appropriate ground for reject-ing a plea agreement.

> The proposition that a facially proper plea agreement must be approved unless disapproval is required by a concern for the rights of the defendant is a far too restrictive view of the court's proper concerns. The plea bargaining process is an essential component of the admin-istration of justice, and if the court has reasonable grounds for believing that acceptance of the plea would be contrary to the sound administration of justice, it may reject the plea.

*United States v. Severino,* 800 F.2d 42, 46 (2d Cir.1986) (internal quotation and cita-tion omitted). *See also United States v. Jeter,* 315 F.3d 445, 447 (5th Cir.2002) ("The court's belief that the defendant would receive too light a sentence is a sound reason for rejecting a plea agree-ment."); *Torres–Echavarria,* 129 F.3d at 696 ("Among the reasons that may justify the exercise of discretion to reject a plea agreement is a concern that the resulting sentence would be too lenient."); *United States v. Skidmore,* 998 F.2d 372, 376 (6th Cir.1993) ("[A] district court [may] reject a plea agreement either because the pro-posed agreement is too lenient or because it is too harsh."); *Carrigan,* 778 F.2d at 1462 ("While '[t]he procedures of Rule 11 are largely for the protection of criminal defendants ... Rule 11 also contemplates the rejection of a negotiated plea when the district court believes that bargain is too lenient, or otherwise not in the public in-terest.' ") (quoting *Miller,* 722 F.2d at 563). We agree that excessive leniency under-mines the sound administration of justice and is a proper factor for a trial judge to consider when evaluating a plea agree-ment.

Here, because Appellants were each charged with two counts of intentional murder, the death penalty was an author-ized punishment. KRS 532.025(2)(a)6, (3).[18] Under the plea agreement, each Ap-pellant would have been convicted of only one Class C felony carrying a maximum sentence of ten years imprisonment. Judge Maricle presided over the first trial and heard all of the evidence against Ap-pellants. After hearing additional evi-dence from the victims' families and friends, he concluded that the agreed sen-tence was too lenient and rejected it. That is exactly the discretionary role that RCr 8.08 contemplates for trial courts. We are unable to conclude that Judge Maricle's exercise of his discretion was not "reasoned and supported by the record," *Workman v. Commonwealth,* Ky., 580 S.W.2d 206, 207 (1979) (citations omitted), *overruled on other grounds by Morton v. Commonwealth,* Ky., 817 S.W.2d 218 (1991), or that his decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* Ky., 993 S.W.2d 941, 945 (1999). Thus, he did not abuse his discretion in rejecting this plea agreement. *See Com-monwealth v. Watson,* 393 Mass. 297, 471 N.E.2d 88, 91 (1984) (finding no abuse of discretion when trial court refused to ac-cept guilty plea to second degree murder in lieu of first degree murder when there was overwhelming evidence of guilt).

*3. Testimony of victims' families and friends.*

 When evaluating a plea agree-ment pursuant to RCr 8.08, the trial court may consider the opinions of the crime victims. *Matheny,* 37 S.W.3d at 756 ("The impact of a crime victim's input on the

---

**18.** Because of the limited record before us, we do not know if the prosecutor actually sought capital punishment in this case. *See*

KRS 532.025(1)(a) (prosecutor to give notice of aggravating circumstances).

viability of a consummated plea agreement is for the trial court alone to decide."). The Commonwealth's attorney has an obligation to consult with the victim on the disposition of the case, including "a negotiated plea." KRS 421.500(6). If the victim is unable to prevail upon the prosecutor, he or she may seek solace from the judge. *See Wilson v. Commonwealth,* Ky.App., 839 S.W.2d 17, 21 (1992) (" '[T]he rights provided to crime victims by KRS 421.500 through 421.550 belong to the victim independent of the Commonwealth, and cannot be plea bargained away without the crime victim's actual approval."); Sara N. Welling, *Victim Participation in Plea Bargains,* 65 Wash. U. L.Q. 301, 355 (1987) ("Exposing the trial judge to the victim's views is an effective approach because trial judges currently have sufficient discretion in accepting plea bargains to take the victim's information into account and reject the plea bargain if the bargain is overly lenient to the defendant.").

▇▇ A victim has the right to submit a "victim impact statement" pursuant to KRS 421.520, and the trial court must consider that statement "prior to any decision on the sentencing ... of the defendant." KRS 421.520(3); *Wilson,* 839 S.W.2d at 21 ("The victim has the right to convey the impact of the crime to the court and take a stand on sentencing. The Commonwealth and appellant could not dispose of these rights by their own agreement."). Although KRS 421.500(1) defines a victim whose statements *"shall* be considered by the court," KRS 421.520(3) (emphasis added), the trial judge is not precluded from considering statements from other family members or friends of the victim. *Brand v. Commonwealth,* Ky. App., 939 S.W.2d 358, 360 (1997). Appellants' reliance on *Schroering v. McKinney,*

Ky., 906 S.W.2d 349 (1995), is misplaced. *Schroering* only held that the widow of a homicide victim had no standing to petition the Court of Appeals for a writ of mandamus to compel the trial court to set aside an order granting shock probation.

Accordingly, we affirm the Court of Appeals' decision to deny Appellants' petition for a writ of prohibition, although on other grounds than those stated in its opinion.

All concur as to Part I.

LAMBERT, C.J.; GRAVES, JOHNSTONE, and WINTERSHEIMER, JJ., concur as to Part II.

KELLER, J., dissents by separate opinion as to Part II, with STUMBO, J., joining that opinion.

LAMBERT, C.J.; GRAVES, and JOHNSTONE, JJ., concur as to Part III. KELLER, J., concurs in part and dissents in part by separate opinion as to Part III, with STUMBO, J., joining that opinion. WINTERSHEIMER, J., concurs in result only as to Part III without separate opinion.

Opinion by Justice KELLER, *concurring in part and dissenting in part.*

I concur fully with Part I of the majority opinion that returns to the *Chamblee*[1]- *Bender*[2] standard for granting a writ of prohibition. I also concur with Part III(1). But, because I believe that RCr 6.16 and RCr 9.64, as interpreted by the majority opinion, violate the separation of powers provisions of Kentucky's Constitution, I respectfully dissent as to Parts II, III(2), and III(3).

---

1. *Chamblee v. Rose,* Ky., 249 S.W.2d 775 (1952).

2. *Bender v. Eaton,* Ky., 343 S.W.2d 799 (1961).

## I. SEPARATION OF POWERS

"It is well settled law in the state of Kentucky that one branch of Kentucky's tripartite government may not encroach upon the inherent powers granted to any other branch."[3] Unlike the U.S. Constitution, "[o]ur Constitution, Sections 27 and 28, is clear and explicit on this delineation."[4] "[T]he framers of Kentucky's constitution ... were undoubtedly familiar with the potential damage to the interests of the citizenry if the powers of government were usurped by one or more branches of that government."[5] Thus, "it has been our view, in interpreting Sections 27 and 28, that the separation of powers doctrine is fundamental to Kentucky's tripartite system of government and must be 'strictly construed.'"[6] "[T]he judiciary should be particularly vigilant to restrain its own exercise of power, because of its unique position as the final and unchecked arbiter of constitutional disputes[,]"[7] and the powers of the Legislature should not "stand or fall according as they appealed to the approval of the judiciary; else one branch of government, and that the most representative of the people, would be destroyed, or at least completely subverted to the judges."[8]

This Court has authority under Section 116 of the Kentucky Constitution to adopt procedural rules.[9] Just as it would be a violation of separation of powers for the Legislature to promulgate rules of practice and procedure for the Court of Justice,[10] a similar constitutional violation of separation of powers occurs when this Court exercises power properly belonging to another branch.[11] Since the enactment of substantive law is the exclusive prerogative of the Legislature under our Constitu-

---

3. *Smothers v. Lewis*, Ky., 672 S.W.2d 62, 64 (1984).

4. *Ky. Alcoholic Beverage Control Bd. v. Klein*, 301 Ky. 757, 192 S.W.2d 735, 738 (1946).

5. *Legislative Research Comm'n v. Brown*, Ky., 664 S.W.2d 907, 911–912 (1984).

6. *Id.* at 912.

7. *Kuprion v. Fitzgerald*, Ky., 888 S.W.2d 679, 699 (1994). *Accord Manning v. Sims*, 308 Ky. 587, 213 S.W.2d 577, 580 (1948) ("It is essential that the sharp separation of the powers of government be preserved carefully by the courts. Those which are judicial must not be permitted to encroach upon those which are legislative.").

8. *E. Ky. Coal Lands Corp. v. Commonwealth*, 127 Ky. 667, 106 S.W. 260, 275 (1907).

9. *Smothers v. Lewis*, Ky., 672 S.W.2d 62, 64 (1984) ("Section 116 of the Constitution of Kentucky's 'Judicial Article' which was approved by the voters in 1976 provides that: 'The Supreme Court shall have the power to prescribe rules governing its appellate jurisdiction....' Thus, the source of the Court's rule making power is firmly rooted within the

Constitution."); *O'Bryan v. Hedgespeth*, Ky., 892 S.W.2d 571, 576 (1995) ("Kentucky Constitution Section 116 vests exclusive jurisdiction in the Supreme Court to prescribe 'rules of practice and procedure for the Court of Justice.'"); *Huff v. Commonwealth*, Ky., 763 S.W.2d 106, 108 (1988) (Gant, J., concurring) ("Section 109 provides that judicial power shall vest in the Supreme Court, and Section 116 empowers the Supreme Court to make all rules of practice and procedure.").

10. KY. CONST. § 116; *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794, 796 (1987) ("The Supreme Court of this Commonwealth has the authority to prescribe rules of practice and procedure in the courts of this Commonwealth. Because K.R.S. 532.055 is a legislative attempt to invade the rule making prerogative of the Supreme Court by legislatively prescribing rules of practice and procedure, it violates the separation of powers doctrine enunciated in Section 28 of the Kentucky Constitution." (citation omitted)).

11. *Prater v. Commonwealth*, Ky., 82 S.W.3d 898, 907 (2002) ("No section of the Kentucky Constitution authorizes the judicial branch to exercise executive power if the executive is 'along for the ride.'").

tion,[12] substantive rules of law, therefore, "cannot originate from the judicial power to regulate practice and procedure in the courts."[13] Accordingly, this Court does not have the power to adopt substantive law under the guise of enacting a procedural rule.[14]

"Procedural law" consists of "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves."[15] A rule is procedural if it "really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law ...."[16] "Substantive law" is "[t]he part of the law that creates, defines, and regulates the rights, duties, and powers of parties."[17] Accordingly, as I see it, the dispositive issue is whether RCr 6.16 and 9.64 are procedural rules or substantive rules of

law. If RCr 6.16 and 9.64 are substantive rules of law, they violate the separation of powers provisions of the Kentucky Constitution and thus are invalid.

## II. NOLLE PROSEQUI

A "nolle prosequi" is "an entry made on the record, by which the prosecutor or plaintiff declares that he will proceed no further."[18] It "may be entered as to an entire charging document, or one or more counts, or even a part of a count."[19] "A nolle prosequi may be entered to a degree of an offense."[20] Although the entry of a nolle prosequi results in the dismissal of a pending criminal charge, it does not operate as an acquittal of the defendant, and therefore, it may not bar a subsequent criminal prosecution.[21]

Under the English common law, the Attorney General had the almost unfettered

12. KY. CONST. § 27; 16A AM. JUR. 2D *Constitutional Law* § 275 (1998) ("Legislative power includes the power to make laws...."); *id.* § 286 ("[W]hether legislative action is appropriate involves the distinction between substance, which is a legitimate subject of legislative action, and procedure, which is under the exclusive jurisdiction of the courts.").

13. *Lunsford v. Commonwealth,* Ky., 436 S.W.2d 512, 514 (1969).

14. *Richey v. Richey,* Ky., 389 S.W.2d 914, 919 (1965) ("Rules of court are procedural. They cannot affect *substantive* law.").

15. BLACK'S LAW DICTIONARY 1221 (7th ed.1999).

16. *Sibbach v. Wilson & Co.,* 312 U.S. 1, 14, 312 U.S. 655, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941).

17. BLACK'S LAW DICTIONARY 1443 (7th ed.1999).

18. 3 BOUVIER'S LAW DICTIONARY 2352 (3rd rev. 8th ed.1914); BLACK'S LAW DICTIONARY 1070 (7th ed.1999) ("1. A legal notice that a lawsuit has been abandoned. 2.

A docket entry showing that the plaintiff or the prosecutor has abandoned the action").

19. *Ward v. State,* 290 Md. 76, 427 A.2d 1008, 1012 (1981).

20. *Hook v. State,* 315 Md. 25, 553 A.2d 233, 238 (1989) (citation omitted).

21. 22A *C.J.S. Criminal Law* § 419 (1989) ("The entry of a nolle prosequi, however, *is* not a final disposition of the case, and will not bar another prosecution for the same offense, but accused may be proceeded against for the same offense only under a new or different charging document or count." (footnotes omitted)); 3 C.E. TORCIA, WHARTON'S CRIMINAL PROCEDURE § 445 (13th ed. Clark Boardman Callaghan 1991) [hereinafter "WHARTON'S CRIMINAL PROCEDURE"] ("A dismissal ... is not a bar to a subsequent prosecution for the same offense." (footnotes omitted)); *State v. Lomax,* 712 S.W.2d 698, 699 (Mo.Ct.App.1986) ("After an order of nolle prosequi is filed, prosecution ceases. The charge may be brought again as long as the accused is not placed in double jeopardy. Jeopardy attaches in a jury trial when the jury has been impaneled and sworn." (citation omitted)).

right to enter a nolle prosequi,[22] "except that such power could not be exercised repeatedly without good and sufficient cause."[23] The Attorney General alone[24] could nolle prosequi a criminal prosecution at any stage of the proceedings without leave of court or the defendant's consent "before the jury [was] charged with the trial of the case, but leave of the court [was] required after the jury [had] been impaneled and sworn and before verdict."[25] In other words, at common law, before the jury was sworn, "[t]he court's function to enter a nolle prosequi on the rolls was purely ministerial."[26]

The Attorney General's authority to nolle prosequi a criminal prosecution entered England's common law in the sixteenth century,[27] and therefore, it became part of Kentucky's common law:

---

22. *Wells v. Miller*, 300 Ky. 680, 190 S.W.2d 41, 43 (1945) (" 'Under the common law of England before a jury is empaneled and even after the defendant is convicted, the Attorney General has the right to enter a nolle prosequi . . . .' " (citation omitted)); *Commonwealth v. Wheeler*, 2 Mass. 172, 174 (1806) ("I observe in the bar, the *nolle prosequi* is alleged to have been entered by the advice of the Court of Common Pleas. Certainly, the court . . . [is] not legally competent to give any advice on this subject. The power of entering a *nolle prosequi* is to be exercised at the discretion of the attorney who prosecutes for the government, and for its exercise he alone is responsible."); James L. Buchwalter, Annotation, *Dismissal of state criminal charge in furtherance of, or in interest of, justice*, 71 A.L.R.5th 1 § 2[a] (1999) ("At common law, the authority to dismiss a criminal charge was vested solely in the prosecutor and exercised through the mechanism of the nolle prosequi.").

23. *People ex rel. Elliott v. Covelli*, 415 Ill. 79, 112 N.E.2d 156, 160 (1953); Note, *The Power of a Public Prosecutor to Dismiss a Prosecution*, 35 L.R.A. 701 (1897) [hereinafter *"Power of a Public Prosecutor to Dismiss a Prosecution"*] ("By the English practice the entry of a nolle prosequi was the prerogative of the attorney general to which there was no limitation except in case of injury from unlimited repetition." (citation omitted)).

24. *Power of a Public Prosecutor to Dismiss a Prosecution*, *supra* note 23. The exclusiveness of the Attorney General's nolle prosequi power is illustrated by an anecdote from the English common law recounted in Raymond Moley, *The Vanishing Jury*, 2 S. CAL. L. REV. 97, 98 n.4 (1928):

> One Atkins having been committed for trial for seditious language, an associate of Atkins named Lacy appeared at the house of Chief Justice Holt and to see the great judge. The servant pleaded the ill health of his master and refused to admit Lacy who then said in a very solemn tone, "Acquaint your master that I must see him, for I bring him a message from the Lord God."
>
> This impressive message moved the Chief Justice to admit the visitor who thus addressed his host:
>
> "I have come to you a prophet from the Lord God, who has sent me to thee, and would have thee grant a nolle prosequi for John Atkins, his servant."
>
> "Thou art a false prophet and lying knave," answered the Chief Justice, "If the Lord God has sent thee, it would have been to the Attorney General, for he knows that it belongeth not to the Chief Justice to grant a nolle prosequi. But I, as Chief Justice, can grant a warrant to commit thee to bear him company in prison."
>
> The Judge's directions were followed and both the prophet and his friend were convicted and punished. 2 Campbell, Lives of the Chief Justices, 173.

25. 22A C.J.S. *Criminal Law* § 420(c) (1989); WHARTON'S CRIMINAL PROCEDURE, *supra* note 21, § 445 ("A dismissal is ordinarily entered . . . before the trial begins . . . . A dismissal may not be filed after the trial has begun except with the defendant's consent." (footnote omitted)).

26. *Lomax*, 712 S.W.2d at 700 (Pudlowski, J., concurring).

27. *State v. Jackson*, 420 So.2d 320, 321 (Fla. Dist.Ct.App.1982) (citing *Stretton & Taylor's Case*, 1 Leon 119, 74 Eng. Rep. 111 (K.B. 1588), for the existence of *nolle prosequi* in the sixteenth century); *Ward v. State*, 290 Md. 76, 427 A.2d 1008, 1012 (1981) ("Apparently the first reported case discussing the entry of

By an act of the Virginia convention of 1776 it was declared "that the common law of England, all statutes or acts of parliament made in aid of the common law prior to the fourth year of the reign of King James I, and which are of a general nature, and not local to that kingdom .... shall be the rule of decision, and shall be considered in full force, until the same shall be altered by the legislative power of this colony." (M. & B. Stat. 612.)

The present constitution provides, and previous constitutions in substance provided, that "all laws which on the first day of June, 1792, were in force in the state of Virginia, and which are of a general nature, and not local to that state, and not repugnant to this constitution, nor to the laws which have been enacted by the General Assembly of the commonwealth, shall be in force in this state until they shall be altered or repealed by the General Assembly."

The Revised Statutes repealed certain statutes of Virginia and of England, as do the General Statutes, but neither repeals the common law of England.

. . . .

But only such principles and rules as constituted a part of the common law prior to the fourth year of the reign of James I are or ever were in force in this state. This is clearly implied in the act of 1776. To declare that the common law and statutes enacted prior to that time should be in force, was equivalent to declaring that no rule of the common law not then recognized and in force in England should be recognized and enforced here.

James I ascended the throne of England in 1603, March 24, and the fourth year of his reign commenced March 24, 1607, and when it is sought to enforce in this state any rule of English common law as such, independently of its soundness in principle, it ought to appear that it was established and recognized as the law of England prior to the latter date.[28]

a nolle prosequi in a criminal prosecution was Stretton and Taylors Case, 1 Leon. 119, 74 Eng. Rep. 111 (K.B.1588), where the Attorney General entered a 'non vult prosequi' for purpose of preventing a private prosecution. Since that time, the nolle prosequi has been a means whereby the government exercises control over pending criminal cases." (citations omitted)); *Commonwealth v. Wheeler*, 2 Mass. 172, 174 (1806) ("The practice of entering a *nolle prosequi* to informations is very ancient[.]"); *Nolle Prosequi*, 1958 CRIM. L. REV. 573, 574 (after noting that "[t]he Attorney General's power [to enter a *nolle prosequi* ] is of great antiquity[,]" states that *nolle prosequi* was established in 1555 when "an information [was] preferred against thirty-nine Members of Parliament[.]").

**28.** *Ray v. Sweeney*, 77 Ky. (14 Bush) 1, 5–6 (1878); *accord* KY. CONST. § 233 ("All laws which, on the first day of June, one thousand seven hundred and ninety-two, were in force in the State of Virginia, and which are of a general nature and not local to that State, and

not repugnant to this Constitution, nor to the laws which have been enacted by the General Assembly of this Commonwealth, shall be in force within this State until they shall be altered or repealed by the General Assembly."); *Hilen v. Hays*, Ky., 673 S.W.2d 713, 715 (1984) ("This provision [Kentucky Constitution, Section 233] had the effect of adopting as the law of this state the common law of England that was part of the law of the State of Virginia at the time." (citations omitted)); *Jones v. Commonwealth*, 269 Ky. 779, 108 S.W.2d 816, 817 (1937), *overruled on other grounds by Smith v. Buchanan*, 291 Ky. 44, 163 S.W.2d 5, 8 (1942) (holding that Kentucky's present Constitution also preserved England's common law prior to 1607 as part of Kentucky's laws); *Jenkins v. Berry*, 119 Ky. 350, 83 S.W. 594, 597 (1904) ("it was however held by this court ... that the statute of 43 Elizabeth was a part of the common law, and also of the general statutes in force in Virginia when Kentucky became a separate state, and, the latter state by her Constitution having adopted the laws of Virginia, it made that

This Court's predecessor employed a similar analysis when faced with the issue of whether the English common-law writ of coram nobis,[29] which had fallen into disuse in the United States, was a part of Kentucky law. The Court held that because it had not been repealed by the Legislature, it remained available:

Section 233 of our Constitution preserves as a part of our system of laws all of those which were in force in the state of Virginia on the 1st day of June 1792, which are of a general nature and not local to that state, nor repugnant to our Constitution or laws enacted in pursuance thereto, "until they shall be altered or repealed by the General Assembly." The common law of Virginia at that time (June 1, 1792) consisted of the common law of England and of acts of Parliament in aid of the common law prior to the fourth year of the reign of James I which were not peculiarly local to that kingdom, and, of course, such laws became the common law of this Commonwealth (Kentucky). So that we are convinced that the writ [of coram nobis] herein applied for became a part of our remedial law upon Kentucky's admission into the Union, and, unless since repealed, it is yet available.[30]

Like the writ of coram nobis, the almost unfettered right of the prosecutor to enter a nolle prosequi became part of the law of Kentucky upon its admission into the Union.[31] And, as a result, prosecutors in Kentucky,[32] like prosecutors in other states,[33] originally exercised the same un-

statute part of the law of this state."); *Coleman v. O'Leary's Exr.*, 114 Ky. 388, 70 S.W. 1068, 1071 (1902) (discussing whether "Elizabeth's statute" on charitable uses was adopted by Kentucky).

29. "[Coram nobis] is an extraordinary and residual remedy to correct or vacate a judgment upon facts or grounds, not appearing on the face of the record and not available by appeal or otherwise, which were discovered after the rendition of the judgment without fault of the party seeking relief." *Harris v. Commonwealth*, Ky., 296 S.W.2d 700, 701 (1956). CR 60.02 "abolishe[d] the 'writ of coram nobis,' and authorizes the granting of this type of relief by motion made under that Rule." *Id.*

30. *See Jones*, 108 S.W.2d at 817 (citations omitted).

31. The unfettered right of the prosecutor to enter a nolle prosequi without the trial court's consent was not abrogated in Virginia until 1803, which was more than ten (10) years after Kentucky's adoption of the laws in force in Virginia as of June 1, 1792. *Anonymous*, 3 Va. 139, 1 Va.Cas. 139, 1803 WL 324 (Va. Gen.Ct.) ("The general court consisting of five judges, at the fall term of 1803, unanimously decided, 'that the district court attorney has not a right to enter a noli prosequi, in any case without the consent of the court first had.' ").

32. *Wells v. Miller*, 300 Ky. 680, 190 S.W.2d 41, 43 (1945) (" 'As a general proposition in Kentucky, the Attorney General, and even the Commonwealth's attorney and County attorneys exercised the same right as to nolle prosequi as did the Attorney General in England until the year 1873, when the Legislature by an Act approved April 9, 1873, imposed limitations upon both the Commonwealth's attorney and the County attorneys in their respective spheres of power to dismiss absolutely indictments and warrants charging defendants with other crimes or misdemeanors." '); *Yocum v. Polly*, 40 Ky. (1 B.Mon.) 358, 359 (1841) (a civil case for malicious prosecution that was based on "the entry of a *nolle prosequi*, by the attorney for the Commonwealth."); *Wood v. Kendall*, 30 Ky. (7 J.J.Marsh.) 212, 213 (1832) (although a civil case, the court refers to a nolle prosequi being entered in 1818 as to two of five defendants indicted for murder). *Cf.* Gen.Stat., ch. 5, Art. IV, § 1 p.185 (Bullitt & Feland 1888) [hereinafter "1873 Statute"] (imposed duty on Commonwealth's Attorneys to prosecute all criminal cases).

33. WHARTON'S CRIMINAL PROCEDURE, *supra* note 21, § 445 ("The prosecutors in the United States came to exercise the same pow-

fettered common-law power as England's Attorney General to nolle prosequi a criminal case.

In 1854, however, the Kentucky Legislature enacted the Code of Practice in Civil and Criminal Cases ("1854 Code"), and although not abolishing the Commonwealth's Attorney's right to enter a nolle prosequi, the 1854 Code restricted the Commonwealth's Attorney's power by providing that an indictment may only be dismissed by "[t]he attorney of the commonwealth, with the permission of the court . . . ." [34] Later, in 1873, the Legislature also enacted a statute ("1873 Statute") that imposed an additional restriction upon the Commonwealth's Attorney's right to dismiss criminal prosecutions:

> That hereafter, before the court shall permit any Commonwealth's Attorney to dismiss any indictment or enter a *nolle prosequi* in any case, such attorney shall file a statement, in writing, setting forth the reasons for such dismissal or failure

to prosecute, which statement shall be signed by said Commonwealth's Attorney, and an order shall be made on the record-book of said court, and it shall remain with the papers of such prosecution as a part of the record.[35]

Thus, with the Legislature's adoption of Section 241 of the 1854 Code and its subsequent enactment of the 1873 Statute, the Commonwealth's Attorney could only dismiss an indictment with permission of the court, and would only be permitted to do so upon reasons, stated in writing, signed by the Commonwealth's Attorney, and deemed sufficient by the court.[36]

In 1876, the Legislature enacted the Code of Practice in Criminal Cases ("Criminal Code") and incorporated in Section 243 thereof the 1854 Code Section 241's requirement that the Commonwealth's Attorney secure the "permission of the court" before dismissing an indictment.[37] But, the Criminal Code was repealed "in its entirety" in 1962[38] with the

---

er [as England's Attorney General])"; Comment, *Criminal Law–Nolle Prosequi–Trial Court Has Power to Dismiss for Want of Prosecution: District of Columbia v. Weams (D.C.Ct.App.1965),* 41 N.Y.U. L. REV. 996, 997 (1966) ("In the United States, although public officials conducted criminal prosecutions, courts held that the local public prosecutors had the same right to enter a nol pros as the Attorney General in England." (footnote omitted)); Raymond Moley, *The Vanishing Jury,* 2 S. CAL. L. REV. 97, 98 (1928) ("The extreme decentralization of the administration of criminal justice in the United States threw this power [nolle prosequi] into the hands of every county prosecutor.").

**34.** M.C. JOHNSON, JAMES HARLAN, AND J.W. STEVENSON, CODE OF PRACTICE IN CIVIL AND CRIMINAL CASES § 241 (1854). Most jurisdictions enacted legislation or rules limiting the prosecutors' absolute common-law power to enter a nolle prosequi. *See* WHARTON'S CRIMINAL PROCEDURE, *supra* note 21, § 445.

**35.** 1873 Statute, *supra* note 32, § 1 p. 185.

**36.** *See Husbands v. Commonwealth,* 143 Ky. 290, 136 S.W. 632, 633 (1911) (where the court held that under Section 243 of the Criminal Code of Practice (the successor to Section 241 of the *Code of Practice in Civil and Criminal Cases* ) and Section 123 of the Kentucky Statutes (the successor to the 1873 Statute), "the commonwealth's attorney can only dismiss an indictment with permission of the court, and will only be permitted to do so upon reasons, stated in writing, signed by him, [and] deemed sufficient by the court"); *cf. Dilger v. Commonwealth,* 88 Ky. 550, 11 S.W. 651, 652 (1889) (where the court stated that the statute "was enacted because of the *improper* dismissal of indictments in some of the courts, and is merely directory").

**37.** Code of Practice in Criminal Cases, § 243 (1876) (repealed 1962, effective January 1, 1963), *reprinted in* CARROLL'S KENTUCKY CODES (1948 revision) [hereinafter "Criminal Code"].

**38.** 1962 Ky. Acts ch. 234, § 61(2) ("The Code of Practice in Criminal Cases is repealed in its entirety.").

Legislature simultaneously "prescribing," but not enacting as part of our statutory law, the Kentucky Rules of Criminal Procedure ("Criminal Rules").[39]

The majority opinion makes the untenable argument that the rules prescribed by the Legislature in 1962 were enacted as statutory law by the Legislature and have not been repealed. This is simply not correct. As Judge Palmore stated for a unanimous Court in *Lunsford v. Commonwealth*,[40] where our predecessor court addressed—like the majority opinion now does—the issue of whether one of the prescribed Criminal Rules could be validated as a legislative enactment:

> Since Chapter 234, Acts of 1962, prescribed a complete set of Rules, including RCr 3.06, subject to revision by this court either before or after the effective date of the Act, *we have considered whether RCr 3.06 can reasonably be validated as a legislative enactment, but have decided that it can not.* Section 0 of the Act declared that the Rules were prescribed in accordance with the principle, finding and declaration contained in the preamble. The preamble expressed the primary purpose of keeping to the legislature those things that lie within the legislative power and leaving to the court those things that are within the judicial power, and an auxiliary purpose of prescribing 'a better expression of current legislative policy for those matters in which both legislative and judicial

discretion are involved.' By specifically making the Rules prescribed in the Act subject to the rule-making authority of the Court of Appeals the General Assembly can have had no intention of doing more than expressing a policy of approval toward the Rules as prescribed in the Act itself. It is elementary, of course, that the General Assembly could not give the judiciary power to amend or repeal that which only the General Assembly could enact in the first instance. From this fundamental premise we deduce that *the General Assembly did not in fact intend to 'enact' any of the Rules prescribed in the Act.* See, for example, Section 60(2) of the Act, in which it is provided that in the event of a legislative amendment of any section of the Criminal Code which has been incorporated into the Rules, 'it shall not be effective as a statute, but shall be construed as a concurrent resolution directed to the Court of Appeals.'[41]

Thus, contrary to the majority opinion, no legislative authority now exists for requiring the trial court's approval of a prosecutor's decision to amend or dismiss an indictment. Such authority was repealed in 1962.[42]

The Criminal Rules prescribed by the Legislature, however, were "supersed[ed]," also in 1962, by our predecessor Court's adoption of its Kentucky Rules of Criminal Procedure (also "Criminal Rules").[43]

**39.** 1962 Ky. Acts ch. 234, preamble, § 0 (recognizing the "merit of having procedural rules promulgated by the department responsible for their proper functioning").

**40.** Ky., 436 S.W.2d 512 (1969).

**41.** *Id.* at 514 (emphasis added).

**42.** *Id.;* 1962 Ky. Acts, ch. 234 § 61("(1) The following sections and subsections of the Kentucky Revised Statutes are repealed: ...

455.070 .... (2) The Code of Practice in Criminal Cases is repealed in its entirety.").

**43.** Ky. Rules of Criminal Procedure, Court of Appeals of Kentucky, Order Adopting Kentucky Rules of Criminal Procedure, entered November 16, 1962 ("It is ordered that the Kentucky Rules of Criminal Procedure attached hereto ... be and they are adopted, effective January 1, 1963, superseding the rules set forth in Section 0, Chapter 234, Acts of 1962.").

Rules 6.16 and 9.64 were identical under both versions of the Criminal Rules and remain substantially the same today. With the enactment of the judicial amendment to our Constitution, the Criminal Rules now exist solely by virtue of the rule making authority of this Court.[44] Unlike many other substantive provisions of the Criminal Code, the Legislature did not reenact Section 243 as part of the Kentucky Revised Statutes.[45] Presumably the original drafters of the Criminal Rules considered the matter procedural rather than substantive.[46]

The 1873 Statute was recompiled several times,[47] finally as KRS 455.070, before it too was repealed in 1962.[48] Thus, after 1962, with the repeal of both the Criminal Code and KRS 455.070, no statutory authority restricted the common-law right of Commonwealth's Attorneys to nolle prosequi a criminal case.[49] As a consequence, the common-law rule was fully revived,[50] and Kentucky's Commonwealth's Attorneys were once again vested with the common-law right to dismiss a criminal case without first securing the trial court's permission.[51]

**44.** KY. CONST. § 116.

**45.** *Lunsford*, 436 S.W.2d at 514.

**46.** *Id.* (where the drafters of the criminal rules incorrectly assume another matter as procedural rather than substantive).

**47.** Carroll's Kentucky Statutes § 123; 1942 Ky. Acts ch. 208, § 1.

**48.** 1962 Ky. Acts ch. 234, § 61(1).

**49.** The legislature presumed, albeit incorrectly, that the right of the Commonwealth's Attorney to dismiss an indictment was procedural. *Lunsford*, 436 S.W.2d at 513 ("The object of Chapter 234, Acts of 1962, was to remove from the body of statutory law all matters within the scope of judicial rule-making.").

**50.** 73 AM. JUR. 2D *Statutes* § 271 (2004) ("It is a general principle that the repeal of a statute which abrogates the common law operates to reinstate the common-law rule, unless it appears that the legislature did not intend such reinstatement." (footnote omitted)); *U.S. Fidelity & Guar. Co. v. Steele,* 241 Ky. 848, 45 S.W.2d 469, 470 (1932) (holding that where an amending act only adds an additional provision to a previous act the repeal of the amending act leaves the previous act in force as before amendment); *see also Beavan v. Went,* 155 Ill. 592, 41 N.E. 91, 93–94 (1895) ("It is a rule of the common law that, where one statute is repealed by another, the repeal of the repealing statute revives the statute repealed; and the same rule is held to extend to the common law, so that,

where an act which supersedes in any particular the common-law rule previously applicable is itself repealed, the rule is held to be revived."); *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars,* 144 W.Va. 137, 107 S.E.2d 353, 357 (1959) ("When a statute repeals the common law and the statute itself is subsequently repealed, the common law is revived and when a statute which is declaratory of the common law is repealed the common law remains in force for the reason that the statute was an affirmance of the common law."); KRS 446.100 (regarding revival of statute once repealing statute is repealed).

**51.** *In re Richards,* 213 F.3d 773, 782–83 (3d Cir.2000) ("The contention that the Territorial Court usurped power in not dismissing the charges against Richards is founded on the venerable common law doctrine of *nolle prosequi.* Under this doctrine, prosecutors have the power to decide whether to proceed with the prosecution of a charged defendant. Absent a controlling statute or rule to the contrary, this power resides solely in the prosecutor's hands until the impanelment and swearing of a jury.... Of course, the Virgin Islands legislature could enact a law or rule to alter or eradicate the *nolle prosequi* power. Until it does so, however, local prosecutors retain the common law *nolle prosequi* power."); *State v. Jackson,* 420 So.2d 320, 322 (Fla.Dist.Ct.App.1982) ("In the absence of statute, the common law continues to be in force in most of the states of this country."); *Pryor v. Thomas,* Ky., 361 S.W.2d 279, 280 (1962) ("it has long been accepted by the bench and bar that the common law prevails

The majority opinion, however, interprets RCr 9.64 as authorizing the trial court to deny the Commonwealth's Attorney's motion to dismiss a criminal prosecution if the dismissal is "clearly contrary to manifest public interest[,]"[52] and thus the rule restricts the Commonwealth's Attorney's common-law right to dismiss a criminal prosecution without the trial court's consent. But such construction of RCr 9.64, in my opinion, makes it a substantive rule of law and a violation of the separation of powers provisions of Kentucky's Constitution. Thus, it is constitutionally invalid.

In holding that RCr 9.64 does not violate the separation of powers requirement of our Constitution, the majority opinion analogizes RCr 9.64 to Federal Rule of Criminal Procedure 48(a) and, in so doing, relies primarily on *United States v. Cowan*.[53] In *Cowan*, the Court of Appeals held that Rule 48(a) did not violate the separation of powers requirement of the U.S. Constitution,[54] and therefore, it concluded that under Rule 48(a), a trial court in its discretion may deny a prosecutor's motion to dismiss an indictment if the dismissal is "clearly contrary to manifest public interest."[55] Regardless of whether this is a correct interpretation of federal law,[56] I do not find Rule 48(a) and *Cowan* supportive of the majority opinion's position. The *Cowan* Court considered the Federal Rules of Criminal Procedure, including Rule 48(a), on equal footing with statutes

unless changed by our constitution or statutes."); *Commonwealth v. Kindness*, 247 Pa.Super. 99, 371 A.2d 1346, 1349 (1977) ("The authorities are virtually unanimous that the historical power to 'nol pros' belonged at common law solely to the Attorney General and remains an exclusive prosecutorial power in the absence of a state constitutional or statutory provision to the contrary."); *State v. Anderson*, 119 Tex. 110, 26 S.W.2d 174, 176 (Com.App.1930) (" 'At common law, the matter of entering a nolle prosequi *rests entirely* within the discretion of the prosecuting officer and leave of court is not necessary; and by the weight of authority, this is still the rule in the absence of a statute where the entry is before the trial begins.' " (citation omitted)); 3 WHARTON'S CRIMINAL LAW § 61 (15th ed. 2003) ("In some jurisdictions, prosecutors still possess, as at common law, the absolute power to enter a nolle prosequi." (citation omitted)); Comment, *Criminal Law—Nolle Prosequi—Trial Court Has Power To Dismiss FOR Want OF Prosecution: District of Columbia v. Weams (D.C.Ct.App.1965)*, 41 N.Y.U. L. REV. 996, 998 (1966) ("American courts have consistently held that absent ... a statute the prosecutor's control of the nolle is absolute." (footnote omitted)); Carol H. Lesnek, *Criminal Law—Binding Effect of Prosecutor's Agreement to Dismiss Prosecution*, 23 WAYNE L. REV. 1129, 1131 (1976–1977) ("In the absence of statute, most jurisdictions

follow the common law rule that the prosecutor has complete authority to control the entry of nolle prosequi until a jury is sworn, and he may thus be able independently to negotiate binding agreements in such jurisdictions. However, when a statute requires court approval before criminal charges may be dismissed, an agreement to dismiss may be equally subject to court sanction." (footnotes omitted)).

52. *Hoskins v. Maricle*, Ky., 150 S.W.3d 1, 20, 2004 WL 1906855 (2004).

53. 524 F.2d 504 (5th Cir.1975).

54. *Id.* at 512.

55. *Id.* at 513.

56. *Compare In re Richards*, 213 F.3d 773, 787 (3d Cir.2000) ("If one adheres to the view that Rule 48(a) exists solely to prevent harassment of a defendant, then the Territorial Court may have exceeded its authority in not promptly dismissing the case against Richards."), *and In re United States*, 345 F.3d 450, 453 (7th Cir.2003) ("[I]t is hard to see ... how [a judge] could properly refuse to dismiss a prosecution merely because he was convinced that the prosecutor was acting in bad faith or contrary to the public interest.").

adopted by a legislative body.[57] Perhaps, the federal rules do have such status,[58] but Kentucky's Criminal Rules do not. Thus, I find fault with the majority's analogy.

The majority opinion cites the decision of the United States Supreme Court in *Rinaldi v. United States*[59] in support of *Cowan's* holding—and thus supportive of the majority opinion's position—that a trial court has discretion to reject the prosecution's motion to dismiss a criminal charge if the dismissal is "clearly contrary to manifest public interest."[60] I do not agree that *Rinaldi* supports *Cowan's* holding. In the context of the language quoted from *Rinaldi* in the majority opinion, the Supreme Court only cited *Cowan* to show that it was the authority for the standard applied by the Court of Appeals in *Rinaldi*, but did not indicate its approval of the *Cowan* standard: "*Under the standard applied by the Court of Appeals, the District Court was empowered to withhold leave if the Government's decision to terminate this prosecution clearly disserved the public interest. United States v. Cowan,* 524 F.2d 504, 513 (C.A.5 1975)."[61] In fact, the *Rinaldi* Court indicated later in the opinion that Rule 48(a)'s "leave of court" restriction was principally to protect a defendant against prosecutorial harassment—

not from a dismissal "clearly contrary to manifest public interest"—and the Court explicitly declined to decide whether Rule 48(a) permits a trial court to deny a prosecutor's motion to dismiss an indictment if the defendant has consented to the motion:

The words "leave of court" were inserted in Rule 48(a) without explanation. While they obviously vest some discretion in the court, the circumstances in which that discretion may properly be exercised have not been delineated by this Court. *The principal object of the "leave of court" requirement is apparently to protect a defendant against prosecutorial harassment, e. g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection.* See, *e.g., United States v. Cox,* 342 F.2d 167, 171(CA5), cert. denied, sub nom. *Cox v. Hauberg,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965); *Woodring v. United States,* 311 F.2d 417, 424(CA8), cert. denied sub nom. *Felice v. United States,* 373 U.S. 915, 83 S.Ct. 1301, 10 L.Ed.2d 415 (1963). But the Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the

---

**57.** *Cowan,* 524 F.2d at 505.

**58.** *See In re Richards,* 213 F.3d 773, 785–786 (3d Cir.2000) ("One possible route out of this conundrum is to argue that whatever substantive effect the Rule possesses emanates from Congress because the Rules Enabling Act contains a procedure through which proposed new rules are submitted to Congress and require at least a seven-month delay before they can take effect, thus providing some check on Congress's potential delegation of its substantive lawmaking authority to the judiciary. In contrast, no similar mechanism exists in the Virgin Islands. But this argument is unsatisfactory. The Rules Enabling Act's provision for submission to Congress does not give Con-

gress any authority that it does not already have. Congress can always vote to abrogate a rule promulgated by the judiciary. Neither the delay in the rules' taking effect nor the submission to Congress requirement creates a veto by silence. Congress must affirmatively legislate to obviate a properly submitted rule." (citation and footnote omitted)).

**59.** 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977) (per curiam).

**60.** *Hoskins v. Maricle,* Ky., 150 S.W.3d 1, 20, 2004 WL 1906855 (2004).

**61.** *Rinaldi,* 434 U.S. at 29, 98 S.Ct. 81 (emphasis added).

public interest. See *United States v. Cowan*, 524 F.2d 504 (C.A.5 1975); *United States v. Ammidown*, 162 U.S.App.D.C. 28, 33, 497 F.2d 615, 620 (1973). *It is unnecessary to decide whether the court has discretion under these circumstances*, since, even assuming it does, the result in this case remains the same.[62]

Thus, the majority opinion's reliance upon *Rinaldi* is misplaced.

Under its exclusive power to enact substantive law, *only* the Legislature may properly take away, restrict, or assign common-law powers to executive constitutional officers without violating the Constitution.[63] This is particularly true as to Commonwealth's Attorneys because under our Constitution the Legislature has the power to abolish the office.[64] Further-

more, only the Legislature has the authority to modify or repeal the English common law that has been adopted by our Constitutions.[65] Consequently, the Legislature, and only it, has the power to enact substantive law that restricts, takes away, or transfers the common-law authority of the Commonwealth's Attorney.

RCr 9.64 is a rule promulgated solely by this Court and its predecessor. It was not adopted under the aegis of the Legislature, and unlike Rule 48(a), it does not bear the imprimatur of the legislative branch. By vesting a trial court with the discretion to deny a Commonwealth's Attorney's motion to dismiss a criminal charge if the trial court determines that the dismissal is clearly contrary to manifest public interest, RCr 9.64 authorizes the substitution of a trial court's judgment

62. *Rinaldi*, 434 U.S. at 30, n. 15, 98 S.Ct. 81 (emphases added); *accord In re: United States*, 345 F.3d 450, 452–53 (7th Cir.2003) ("But the purpose, at least the principal purpose, is to protect a defendant from the government's harassing him by repeatedly filing charges and then dismissing them before they are adjudicated.").

63. *McClure v. Augustus*, Ky., 85 S.W.3d 584, 586 (2002) ("[T]he General Assembly may take common-law powers away from executive constitutional officers and assign them to different executive officers or agencies without violating the constitution . . . ."); *Rouse v. Johnson*, 234 Ky. 473, 28 S.W.2d 745, 749 (1930) ("That the Legislature may annex additional duties to a constitutional office, or confer powers upon a constitutional officer other than those expressly prescribed by the Constitution, unless inhibited from so doing by that instrument, is everywhere recognized and practiced in this and other jurisdictions, illustrations of which in this state are to be found from time to time since the creation of the commonwealth."); *Holsclaw v. Stephens*, Ky., 507 S.W.2d 462, 469 (1973) ("Our State Constitution is a limitation upon the exercise of power rather than a grant of any specific power to the legislature. The legislature may enact any law which is not expressly or impliedly prohibited by the Constitution of the United States or the Constitution of Ken-

tucky."); *Dalton v. State Prop. and Bldgs. Comm'n*, Ky., 304 S.W.2d 342, 357 (1957) ("Under the principle of separation of governmental powers, the legislative power of the state is vested in the state legislature, our General Assembly. The power of the legislature is derived from the people through the Constitution. It is a generally recognized and oft repeated principle that except where limitations have been imposed, either by the federal or state constitution, the power of the state legislature is unlimited and practically absolute, covering the whole range of legitimate legislation. Such is the authority conferred upon the General Assembly by the people of the Commonwealth under our Constitution since 1850." (citation omitted)).

64. KY. CONST. § 97; *Hancock v. Schroering*, Ky., 481 S.W.2d 57, 60 (1972) ("The office of Commonwealth's attorney is also created by the Kentucky Constitution with the proviso that it may be abolished by the legislature.").

65. Ky. Const. § 233; *Johnson v. Commonwealth ex rel. Meredith*, 291 Ky. 829, 165 S.W.2d 820, 828 (1942) ("Section 233 of the Constitution logically gives the general assembly plenary power to abrogate or modify the common law.").

for that of the Commonwealth's Attorney and, therefore, is clearly a substantive rule of law.[66] In other words, as construed by the majority opinion, RCr 9.64 "does not enforce a right recognized by substantive law, but rather transfers discretion that was once wielded by ... [Commonwealth's Attorneys] into judicial hands ...."[67] Thus, RCr 9.64, as interpreted, is clearly not a procedural rule, but a substantive rule of law, and therefore, its promulgation by this Court offends Sections 27 and 28 of our Constitution.

The majority opinion cites prior case law, former Criminal Code Section 243, and other prior legislative enactments in support of its holding that RCr 9.64 is a valid restriction on the Commonwealth's Attorney's common-law right to dismiss a criminal prosecution without the trial court's consent. The majority opinion's reliance is misplaced. As previously noted, both Section 243 and KRS 455.070 were repealed in 1962 and have not been reenacted by the Legislature. Accordingly, Section 243, KRS 455.070, other prior legislative enactments since repealed, or case law based on those enactments are not supportive of today's holding by the majority opinion.

As construed by the majority opinion, RCr 9.64 invades the province of the Legislature and thus is invalid.

## III. AMENDMENT OF INDICTMENT

I believe that the majority's interpretation of RCr 6.16's limitation on the Commonwealth's Attorneys' power to amend an indictment also violates the separation of powers provisions in our Constitution. A grand jury is charged with returning an indictment upon sufficient evidence, but once returned, the Commonwealth's Attorney is responsible for its prosecution.[68] RCr 6.16, as interpreted by the majority opinion, i.e., the trial court may deny a motion by the Commonwealth's Attorney to amend an indictment if the amendment is "clearly contrary to manifest public interest,"[69] improperly transfers to the judiciary the Commonwealth's Attorneys' prosecutorial discretion to amend an indictment to a lesser-included offense.

The grand jury represents the Commonwealth in making an investigation into a criminal charge and fulfills its duty with the completion of its investigation and the return of an indictment or of a report of no indictment to the court.[70] Once, an indictment is returned, the grand jury has no

---

**66.** *In re Richards,* 213 F.3d 773, 784 (3d Cir.2000) ("By commanding and empowering a court to determine whether the dismissal of a prosecution would be in the public interest and the interest of justice, ... [the court rule] licenses the substitution of ... the [trial court's] judgment for that of the prosecutor. This is not, therefore, a rule of practice and procedure' within the scope of the local courts' rulemaking ability ..., but a substantive rule of law.").

**67.** *Id.*

**68.** *Hancock v. Schroering,* Ky., 481 S.W.2d 57, 60 (1972) ("By legislative delegation, the Commonwealth's attorney is charge[d] with the responsibility of prosecuting all violations of the criminal and penal laws of the Commonwealth." (citation omitted)).

**69.** *Hoskins v. Maricle,* Ky., 150 S.W.3d 1, 24, 2004 WL 1906855 (2004).

**70.** RCr 5.02 ("The court shall swear the grand jurors and charge them to inquire into every offense for which any person has been held to answer and for which an indictment of information has not been filed, or other offenses which come to their attention or of which any of them has knowledge."); RCr 5.10 ("The grand jurors shall find an indictment where they have received what they believe to be sufficient evidence to support it ...."); RCr 5.22(1) ("If the defendant has been held to answer and the votes of the grand jurors are insufficient in number to find an indictment, the foreperson shall so report forthwith to the circuit court in writing.").

further role in matter, and the Commonwealth's Attorney becomes the exclusive representative of the Commonwealth in the indictment's prosecution.[71] Thus, as the Commonwealth's representative, the Commonwealth's Attorney, not the judiciary, is properly vested with the discretion of determining whether to plea bargain, go to trial, or even dismiss the indictment.[72]

Although at common law, an indictment could not be amended,[73] this was changed by a 1942 amendment to Criminal Code Section 126 so as to allow an amendment "in respect of any defect, imperfection or omission in the matter of form only."[74] This leave to amend an indictment, however, was broadened considerably in 1962 with the adoption of the present Criminal Rules, "making substantial rights the criteria rather than the less significant matter of form."[75] Accordingly, our rules authorize the Commonwealth's Attorney to

**71.** *Hancock,* 481 S.W.2d at 60; KRS 69.010(1) ("[T]he Commonwealth's attorney shall ... attend to all civil cases and proceedings in which the Commonwealth is interested in the Circuit Courts of his judicial circuit.").

**72.** *See Flynt v. Commonwealth,* Ky., 105 S.W.3d 415, 424–425 (2003) ("It is manifest that the prosecution of crime is an executive function and that 'the duty of the executive department is to enforce the criminal laws.' Although it is beyond dispute that the executive branch's prosecutorial function *includes* 'the decision whether or not to prosecute, and what charge to file or bring before a grand jury,' it is argued in favor of Appellee Elliott's interpretation of KRS 533.250(2) that, after the grand jury returns an indictment, the disposition of a criminal matter is exclusively a judicial function. We observe, however, that this view of the scope of prosecutorial authority is contradicted not only by established understandings of this authority, but also by Kentucky statutory law and the precedent of this Court and its predecessor." (footnotes omitted)); *id.* at 425 ("And, because prosecutors have the sole discretion whether to engage in plea bargaining with a defendant, this court and its predecessor have held that, unless the Commonwealth consents, courts cannot: (1) accept pleas of guilty and unilaterally limit the sentences which may be imposed; (2) amend a charge prior to the presentation of evidence; or (3) dismiss a valid indictment ...." (footnotes omitted)); *Commonwealth v. Cundiff,* 149 Ky. 37, 147 S.W. 767, 768 (1912) ("A prosecution by indictment is a litigation in which the state is plaintiff or complainant, and is represented by the commonwealth's attorney. The judge does not represent the state any more than he does the defendant in the prosecution. His right to control the prosecution goes only to the extent of determining whether or not the indictment is good on demurrer.").

**73.** B.H. Glenn & C.C. Marvel, Annotation, *Comment Note—Power of court to make or permit amendment of indictment,* 17 A.L.R.3d 1181, § 2 (2004) ("At common law the requirement that an accused could be held to answer for a serious offense only on the presentment or indictment of a grand jury was generally held to preclude the amendment of an indictment by the court."); 1 CHARLES ALAN WRIGHT, FEDERAL PRACTICE & PROCEDURE § 127 ("The federal courts continue to adhere to the historic rule that an indictment may not be amended.").

**74.** 1942 Ky. Acts ch. 142, § 5; Criminal Code, *supra* note 37, § 126(5); *see also International Shoe Co. v. Commonwealth,* 300 Ky. 806, 190 S.W.2d 553, 554 (1945) ("It is obvious, from the language of the section, that it was not the intention of the Legislature to permit the Commonwealth's Attorney to amend an indictment by supplying substantial averments omitted by the Grand Jury.").

**75.** RCr 6.16, unofficial comments (1962); *accord Brown v. Commonwealth,* Ky., 378 S.W.2d 608, 610 (1964), *overruled on other grounds by Payne v. Commonwealth,* Ky., 656 S.W.2d 719 (1983) ("Under the former Criminal Code of Procedure, an amendment to include such an essential averment as the one in question would have been impossible, as only amendments as to form were permissible. However, the new Rules of Criminal Procedure are broader in this area. RCr 6.16 states: 'The court may permit an indictment or information to be amended any time before verdict or finding if no additional or different offense is charged and if substantial rights of

amend indictments "any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."[76] RCr 6.16 places no other restrictions upon the Commonwealth's Attorney's authority to amend an indictment.

But, as interpreted by the majority opinion, RCr 6.16 violates the separation of powers provisions of our Constitution by authorizing the trial court to exercise discretion properly belonging to the Commonwealth's Attorney, *i.e.*, whether to amend the indictment to a lesser-included offense. Thus, RCr 6.16 is invalid.

Regardless, one cannot convincingly argue that the defendant's substantial rights are prejudiced when an indictment is amended to a lesser-included offense, particularly when the defendant consents to such an amendment. Furthermore, "less-er included offenses" are included in the greater indicted offense,[77] and just as a defendant may properly be convicted at trial of any lesser-included offense supported by the evidence without an amendment of the indictment,[78] a fortiori, with the consent of the Commonwealth's Attorney, a defendant may plead guilty to a lesser-included offense without the necessity of an amendment of the indictment.[79] Accordingly, an amendment of the indictments was not necessary in order for the Appellants to plead to a lesser-included offense since the Appellants and the Commonwealth's Attorney were in agreement.

## IV. CONCLUSION

In *Commonwealth v. Corey*,[80] this Court held "that by virtue of RCr 8.08, and without regard to the wishes of the Common-

the defendant are not prejudiced.' This rule is based on Federal Criminal Rule 7(e) but is less restricted. The federal rule allows only an information to be so amended, restricting any amendment of the indictment to the grand jury.").

**76.** RCr 6.16.

**77.** *Cody v. Commonwealth*, Ky., 449 S.W.2d 749, 751 (1970) ("A defendant may be convicted of the crime stated in the indictment and all other crimes growing out of the same act of a lower degree. This is a well-established general rule." (citation omitted)); *Commonwealth v. Couch*, 32 Ky. L. Rptr. 638, 106 S.W. 830 (1908) ("The indictment is for murder, and under this indictment the defendant may be prosecuted for any degree of homicide, to wit, murder and voluntary or involuntary manslaughter." (citation omitted)).

**78.** *See* 1 WILLIAM S. COOPER, KENTUCKY INSTRUCTIONS TO JURIES (CRIMINAL) § 1.05 (4th ed. Anderson 1993); KRS 505.020(2) ("A defendant may be convicted of an offense that is included in any offense with which he is formally charged. An offense is so included when: (a) It is established by proof of the same or less than all of the facts required to establish the commission of the offense charged ....."); *see also* KRS 505.020 Kentucky Crime Commission/LRC Commentary (1974) ("[Subsection (2)] provide[s] ... the circumstances under which conviction of an offense not expressly named in the charging instrument is appropriate.").

**79.** *Black v. State*, 586 So.2d 968, 970 (Ala. Crim.App., 1991) ("The principle is well settled that 'an indictment charging a felony or the highest grade of the offense by operation of law charges every lesser offense included in the one charged.' The concept of a lesser included offense does not involve either an amendment of the indictment or a variance between the pleading and the proof." (citation omitted)); *cf. State v. Harden*, 506 So.2d 1265, 1271 n. 4 (La.Ct.App.1987) (relying on rule that allows "[t]he defendant, with the consent of the district attorney, [to] plead guilty [to] a lesser offense that is included in the offense charged in the indictment[,]" the court held "that an amendment to the indictment ... was not necessary as manslaughter, to which the district attorney agreed to permit the defendant to plead, is a lesser and included crime of first degree murder for which the defendant was indicted." (citation omitted)).

**80.** Ky., 826 S.W.2d 319 (1992).

wealth, a defendant has an absolute right to unconditionally plead guilty to the crime charged in the indictment ...." [81] Accordingly, with the Commonwealth's Attorney's consent, I believe that a defendant should have the right to plead guilty to a lesser-included offense of the crime charged in the indictment. After all, "[i]t ... [can] hardly be disputed that the Commonwealth's Attorney is in charge of the prosecution of violations of criminal and penal laws and that plea bargaining is a part of the process." [82] Here, the trial judge disagreed with the Commonwealth's Attorney's exercise of prosecutorial discretion and rejected the plea agreements because in his opinion the Commonwealth's Attorney had entered into agreements that were "too lenient." That is not the role assigned under our Constitution and statutes to the trial judge. To paraphrase Judge Posner, "[t]he judge thus is playing ... [Commonwealth's Attorney]. It is no doubt a position that he could fill with distinction, but it is occupied by another person." [83] "Paradoxically, the plenary prosecutorial power of the executive branch safeguards liberty, for, in conjunction with the plenary legislative power of Congress, it assures that no one can be convicted of a crime without the concurrence of all three branches .... When a judge assumes the power to prosecute, the number shrinks to two." [84] The majority opinion fails to realize that "[t]he judiciary cannot compel prosecutions ...." [85] "If it be said that this may leave society at the mercy of an unfaithful prosecuting attorney, the answer is that the power of control has been given him by statute, and for any neglect of duty not only is he answerable to the people, but may be proceeded against in the manner provided by law." [86] Any restrictions on the powers of the Commonwealth's Attorney must come from the Legislature, not this Court, but until it does so, Kentucky's Commonwealth's Attorneys retain the common law nolle prosequi power.

I will briefly summarize my position. Under Kentucky's common law, even at a time when an indictment could not be amended, the Commonwealth's Attorney had an almost unfettered right to dismiss (nolle prosequi) a criminal prosecution. This power was at one time restricted by legislative enactments that were repealed and replaced with RCr 9.64, a "procedural" rule promulgated by this Court and its predecessor. But RCr 9.64, as interpreted by the majority opinion, is invalid because it is a substantive rule of law and thus

81. *Id.* at 321.

82. *Id.* (citation omitted). Prior to the passage of the judicial amendment, our Constitution required that "[a]ll prosecutions shall be carried on in the name and by the authority of the 'Commonwealth of Kentucky,' and conclude against the peace and dignity of the same." ' KY. CONST. § 123 (repealed 1976).

83. *In re United States*, 345 F.3d 450, 453 (7th Cir.2003).

84. *Id.* at 454.

85. *United States v. Martin*, 287 F.3d 609, 623 (7th Cir.2002); *accord In re Richards*, 213 F.3d 773, 785 (3d Cir.2000) ("[T]here is likely little a court can do to compel action even if it denies a Rule 48(a) motion. Even if we were to uphold the Territorial Court's failure to grant the motion to dismiss, therefore, that court would seem to have few options if the day of trial came, and the prosecution refused to call witnesses or otherwise go forward with its case. The substantive bite of the rule, therefore, appears to be hampered by the dullness of its teeth." (citation omitted)).

86. *Commonwealth v. Euster*, 237 Ky. 162, 35 S.W.2d 1, 3 (1931); *Adkins v. Commonwealth*, 232 Ky. 312, 23 S.W.2d 277, 279 (1929) (holding that exercise of lawful authority by one within executive branch was not subject to interference by judiciary even in case of gross abuse).

violates the separation of powers provisions of the Kentucky Constitution. Accordingly, in the absence of legislative restriction, Commonwealth's Attorneys once again have the common-law right to dismiss an indictment in whole or part,[87] regardless of past practices resulting from legislative enactments now repealed.[88] In other words, the repeal of statutes restricting the common-law rule fully revived the rule as it existed at common law. Therefore, I would interpret RCr 9.64 as vesting in the trial court only the discretion to require the prosecutor to state in writing the reasons for the dismissal if the defendant objects so as to prevent repeated dismissal of criminal charges without good cause.[89] I would interpret RCr 6.16 as it is plainly written, i.e., authorizing the Commonwealth's Attorney to amend an indictment "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."[90] Because Appellants' pleas are to a lesser-included offense, however, I would hold that an amendment of the indictments is not necessary in this case.

For these reasons, I believe that the trial court is required to accept the Appellants' pleas with these two qualifications: (1) under RCr 8.10,[91] the trial court is not bound by the Commonwealth's Attorney's sentencing recommendation,[92] and (2) before accepting the Appellants' guilty pleas, the trial court must find that the pleas are made knowingly, intelligently, and voluntarily.[93] Therefore, I would issue a writ

87. See supra notes 47, 48.

88. See In re Richards, 213 F.3d 773, 785 (3d Cir.2000) ("[I]f Rule 48(a) cannot be promulgated by a Virgin Islands court, past practices to the contrary are irrelevant.").

89. Cf. In re Richards, 213 F.3d at 788 ("We conclude that the Territorial Court's mere effort to obtain information surrounding the prosecution's attempted dismissal of Richards's information does not suffice to work a substantive change in the prosecution's power of nolle prosequi.").

90. RCr 6.16.

91. RCr 8.10 provides:
 At any time before judgment the court may permit the plea of guilty or guilty but mentally ill, to be withdrawn and a plea of not guilty substituted.
 If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in that guilty plea the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.
 The court can defer accepting or rejecting the plea agreement until there has been an opportunity to consider the presentence report.

92. Matheny v. Commonwealth, Ky., 37 S.W.3d 756, 759 (2001) (quoting Misher, 576 S.W.2d at 241) ("For guidance to the bench and bar, we set forth the preferred procedure a trial court should follow when accepting a guilty plea that is made pursuant to a plea agreement .... 'The sentencing court should merely accept the plea, note the recommendation or agreement concerning sentence, and set a day certain for sentencing. No sentencing at all should be carried out until KRS 532.050 has been complied with.' "); Misher v. Commonwealth, Ky.App., 576 S.W.2d 238, 241 (1978) ("The sentencing function of our courts on pleas of guilty is carried out by the judge. While the prosecutor and defense counsel, along with the defendant, may discuss and negotiate, they cannot impose sentence by agreement.").

93. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); RCr 8.08 ("The court ... shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge.").

directing the trial judge to accept the guilty pleas upon a finding that the pleas are made knowingly, intelligently, and voluntarily by Appellants. The trial court, however, may defer accepting the plea agreements as to the recommended sentences until after its consideration of the presentence reports.[94]

STUMBO, J., joins this opinion, concurring in part and dissenting in part.

---

**94.** RCr 8.10; *Misher,* 576 S.W.2d at 241. ("The sentencing court should merely accept the plea, note the recommendation or agreement concerning sentence, and set a day certain for sentencing. No sentencing at all should be carried out until KRS 532.050 has been complied with.").